NOT DESIGNATED FOR PUBLICATION

No. 119,076

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SIDNEY W. CLARK,
*Appellant.*

MEMORANDUM OPINION

Appeal from Reno District Court, TIMOTHY J. CHAMBERS, judge. Opinion filed April 19, 2019. Sentence vacated and case remanded with directions.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., MALONE and POWELL, JJ.

POWELL, J.: Sidney W. Clark argues his 2005 sentence for aggravated criminal sodomy is illegal because the district court incorrectly classified his prior Oklahoma conviction as a person crime when calculating his criminal history score. Specifically, Clark claims his Oklahoma conviction for placing bodily fluids upon a government employee should have been scored as a nonperson crime. Under the identical-or-narrower rule adopted by our Supreme Court in *State v. Wetrich*, 307 Kan. 552, Syl. ¶ 3, 412 P.3d 984 (2018), we are compelled to find that Oklahoma's statute for the crime of placing bodily fluids on a government employee is not comparable to Kansas' crime of battery against a law enforcement officer, meaning the Oklahoma conviction must be classified

1

as a nonperson felony for criminal history purposes. Accordingly, we vacate Clark's sentence and remand for resentencing.

FACTUAL AND PROCEDURAL BACKGROUND

As part of a plea agreement with the State, Clark pled guilty to one count of aggravated criminal sodomy, a severity level 2 person felony. Clark committed this crime in January 2004. In exchange for his guilty plea, the State dismissed the additional pending charges of one count of aggravated kidnapping, two counts of rape, three counts of aggravated criminal sodomy, one count of aggravated burglary, and one count of robbery.

At Clark's sentencing on June 9, 2005, the district court determined his criminal history score was B based in part on a 2000 Oklahoma conviction for placing bodily fluids on a government employee, which the district court scored as a person felony. After denying his motion for a downward departure, the district court sentenced Clark to the aggravated term of 460 months in prison.

On April 25, 2017, Clark filed his present pro se motion to correct illegal sentence under K.S.A. 22-3504. Clark argued that his Oklahoma conviction for placing bodily fluids on a government employee under Okla. Stat. tit. 21, § 650.9 (1999) was "not comparable to any Kansas criminal statute." He alleged that after law enforcement sprayed him with pepper foam spray, he was involuntarily spitting and retching and that this involuntary act led to his conviction for placing bodily fluids on a government employee under the Oklahoma statute. Clark identified K.S.A. 2003 Supp. 21-3413, which criminalizes battery against a law enforcement officer and is a class A misdemeanor, as the most comparable Kansas statute. In arguing that the statutes were not comparable, Clark emphasized the fact that the Kansas battery against a law enforcement officer statute required intentional contact with another person when done in

2

a rude, insulting, or angry manner. See K.S.A. 2003 Supp. 21-3413; K.S.A. 2003 Supp. 21-3412(a)(2). Clark argued that his "accidental" act of spitting would not likely have qualified as "rude, insulting, or angry behavior" under the Kansas statute.

After holding a brief hearing on June 2, 2017, the district court issued a written decision denying Clark's motion to correct illegal sentence. The district court ruled that Okla. Stat. tit. 21, § 650.9 is comparable to K.S.A. 21-3413(a)(3), battery against a law enforcement officer. Applying the rule that existed prior to the adoption of the identical-or-narrower rule in *Wetrich*, the written decision stated: "[T]he statutes do not need to be identical with identical elements. The statutes being compared must be comparable." The district court found the statutes comparable and classified Clark's Oklahoma offense as a person felony for criminal history purposes.

Clark timely appeals.

DID THE DISTRICT COURT ERR IN DENYING
CLARK'S MOTION TO CORRECT AN ILLEGAL SENTENCE?

A.    *Classification of the Oklahoma conviction*

Clark argues his sentence is illegal because the district court erroneously classified his 2000 Oklahoma conviction for placing bodily fluids upon a government employee under Okla. Stat. tit. 21, § 650.9 as a person felony. He contends the Oklahoma statute is not comparable to Kansas' criminal statute prohibiting battery of a law enforcement officer, K.S.A. 2003 Supp. 21-3413 (now K.S.A. 2018 Supp. 21-5413), because the Oklahoma statute is broader than the Kansas statute. Clark contends the district court should have classified his Oklahoma conviction as a nonperson felony and asks us to remand the case for resentencing with an amended criminal history score. Conversely, the State argues that the crimes are comparable.

3

The question of whether a district court has properly classified a prior conviction as a person or nonperson offense involves the interpretation of the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2018 Supp. 21-6801 et seq. Interpretation of a sentencing statute and whether the district court properly classified a defendant's prior conviction for criminal history purposes are both questions of law subject to our unlimited review. *State v. Warren*, 307 Kan. 609, 612, 412 P.3d 993 (2018); *State v. Dickey*, 301 Kan. 1018, Syl. ¶ 5, 350 P.3d 1054 (2015).

Clark's presentence investigation report (PSI) includes a 2000 conviction for "Placing Bodily Fluids upon Government Employee" under Okla. Stat. tit. 21, § 650.9. When classifying an out-of-state conviction, our first task is to determine whether the convicting jurisdiction classifies the prior conviction a felony or misdemeanor. See K.S.A. 2018 Supp. 21-6811(e)(2). The parties do not dispute that Okla. Stat. tit. 21, § 650.9 is a felony under Oklahoma law.

Next, we determine whether the district court should have classified the Oklahoma conviction as a person or nonperson offense by looking for a comparable Kansas offense in effect at the time the defendant committed the crime of conviction. See K.S.A. 2018 Supp. 21-6811(e)(3); *State v. Keel*, 302 Kan. 560, 590, 357 P.3d 251 (2015), *cert. denied* 136 S. Ct. 865 (2016). If Kansas has no comparable crime, then the out-of-state conviction must classified as a nonperson crime. K.S.A. 2018 Supp. 21-6811(e)(3).

In *Wetrich*, our Supreme Court adopted the following rule:

> "[I]nterpreting 'comparable offenses' in K.S.A. 2017 Supp. 21-6811(e)(3) to mean that the out-of-state crime cannot have broader elements than the Kansas reference offense— that is, using the identical-or-narrower rule—furthers the KSGA's goal of an even- handed, predictable, and consistent application of the law across jurisdictional lines. Cf. *Johnson*, 135 S. Ct. at 2562-63 (discussing goal of doctrine of stare decisis to effect even- handed, predictable, and consistent application of the law). Accordingly, we hereby adopt

4

that interpretation. For an out-of-state conviction to be comparable to an offense under the Kansas criminal code, the elements of the out-of-state crime cannot be broader than the elements of the Kansas crime. In other words, the elements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced." 307 Kan. at 561-62.

The *Wetrich* court's construction of the statute is contrary to how K.S.A. 2017 Supp. 21-6811(e) had been analyzed in the past. See *State v. Williams*, 299 Kan. 870, 873, 326 P.3d 1070 (2014) (finding comparable offense under statute means offenses need only be comparable rather than identical). Notably, *Wetrich* was decided after the district court here ruled that the Oklahoma statute was comparable to the Kansas statute.

To apply the identical-or-narrower rule, we compare the elements of the Oklahoma statute to the elements of the Kansas statute:

| K.S.A. 2003 Supp. 21-3413 (with battery set out in K.S.A. 21-3412) Battery against a law enforcement officer | Okla. Stat. tit. 21, § 650.9. Persons in custody - Placing body wastes or fluids upon government employee or contractor |
| --- | --- |
| Intentionally or recklessly causing bodily harm to another person; or<br><br>intentionally causing physical contact with another person when done in a rude, insulting or angry manner<br><br>(1) committed against a uniformed or properly identified state, county or city law enforcement officer while such officer is engaged in the performance of such officer's duty; or<br><br>(2)-(5) committed against a: state correctional officer or employee by a person in custody of the secretary of corrections; juvenile correctional facility officer or employee by a person confined in such facility; juvenile detention facility officer or employee by a person confined in such facility; a city or county correctional officer or employee by a | Every person in the custody of the state, a county or city or a contractor of the state, a county or a city who throws, transfers or in any manner places feces, urine, semen, saliva or blood upon the person of an employee of the state, a county or a city or an employee of a contractor of the state, a county or a city shall, upon conviction thereof, be guilty of a felony. |

5

person confined in a city holding facility or county jail facility while such officer or employee is engaged in the performance of such officer's or employee's duty.

Clark claims that the Oklahoma statute is broader than the comparable Kansas statute for battery of a law enforcement officer. He asserts that the two statutes are not comparable for the purpose of determining whether his Oklahoma conviction was a person or nonperson crime. To support his position, Clark argues that the Oklahoma statute for placing body wastes or fluids on a government employee covers a broader range of conduct than does the Kansas statute for battery against a law enforcement officer, particularly with respect to the status of the victims and the fact that the Kansas statute requires a battery.

We note there are several differences in the statutes. First, K.S.A. 2003 Supp. 21-3413 incorporates the definition of battery as defined in K.S.A. 2003 Supp. 21-3412. K.S.A. 2003 Supp. 21-3412(a)(1) defines battery as "[i]ntentionally or recklessly causing bodily harm to another person;" in K.S.A. 2003 Supp. 21-3412(a)(2), battery is defined as "intentionally causing physical contact with another person when done in a rude, insulting or angry manner." However, the Oklahoma statute does not specifically require a battery, as do several other Oklahoma statutes such as aggravated assault and battery upon a peace officer (Okla. Stat. tit. 21, § 650), assault or battery on a corrections officer (Okla. Stat. tit. 21, § 650.2), and assault and battery on a juvenile detention center employee (Okla. Stat. tit. 21, § 650.8). Oklahoma defined battery at the relevant time as "any willful and unlawful use of force or violence upon the person of another." Okla. Stat. tit. 21, § 642 (1999).

Second, the victim elements of the statutes differ. K.S.A. 2003 Supp. 21-3413 explicitly limits the victim to a law enforcement officer. In contrast, the Oklahoma statute

6

applies to a larger category of victims, with the victims of the crime being any government employee or contractor. See Okla. Stat. tit. 21, § 650.9.

Third, the Kansas statutes include a mental culpability element, indicating the act must be done "intentionally or recklessly" or "intentionally" and "in a rude, insulting or angry manner." See K.S.A. 2003 Supp. 21-3413; K.S.A. 2003 Supp. 21-3412(a). The Oklahoma statute does not have a mental culpability element, so it covers a broader range of conduct than the Kansas statute.

But the State cites to us four cases which it claims support the proposition that the act of throwing, transferring, or placing bodily fluids upon another—as required by the Oklahoma statute—constitutes a battery, thereby meeting the intent element under Kansas law. See, e.g., *State v. Davis*, No. 116,749, 2017 WL 6625550, at *3 (Kan. App. 2017) (unpublished opinion) (Oregon statute that criminalizes throwing bodily substances at corrections officers comparable to Kansas crime of battery and therefore properly classified as person crime), *rev. granted* 308 Kan. 1597 (2018); *State v. Day*, No. 113,171, 2015 WL 7190602, at *3 (Kan. App. 2015) (unpublished opinion) (evidence which showed belligerent, disrespectful, and intoxicated defendant spitting on law enforcement officer supported criminal battery conviction); *State v. Welch*, No. 109,343, 2014 WL 4080064, at *2-3 (Kan. App. 2014) (unpublished opinion) (evidence supported battery convictions where defendant struggled and resisted officers, spat multiple times despite warnings not to do so, and had to be restrained while yelling profanities); *State v. Deleon*, No. 92,756, 2005 WL 2665685, at *2 (Kan. App. 2005) (unpublished opinion) (battery conviction upheld as district court did not err in admitting defendant's own declarations against interest).

We disagree with the State that these cases support the proposition for which they are cited. As the parentheticals suggest, *Davis* stands for the proposition that an Oregon statute, which criminalizes the throwing of bodily fluids, is comparable to the Kansas

7

crime of battery, but that case relies upon the pre-*Wetrich* standard to reach that conclusion. *Davis*, 2017 WL 6625550, at *3-4. *Deleon* merely addressed the question of whether some of the defendant's statements were admissible as evidence; it did not directly address the question of whether the defendant's act of throwing urine on a law enforcement officer constituted a battery. 2005 WL 2665685, at *1. Both *Day* and *Welch* involve sufficiency of the evidence determinations. Under the facts presented in those cases, the panels found sufficient evidence to support the battery convictions. But we note that evidence of rude, insulting, or angry acts in both these cases were more than acts of spitting. In *Day*, in addition to spitting on officers, the defendant screamed at them, called them names, yelled profanities, and kicked one of the officers. 2015 WL 7190602, at *1-2. In *Welch*, the defendant "fought and resisted" several law enforcement officers, "kicked one officer twice," and "spat of the face of another." 2014 WL 4080064, at *1. In fact, the *Welch* panel specifically stated that the evidence "provided the jury much more than just a single act of spitting." 2014 WL 4080064, at *2.

We acknowledge that our review of the elements of the Oklahoma statute for placing bodily fluids upon a government employee clearly suggests that it is a person crime given that the statute criminalizes certain conduct directed at another person. But under the narrower-or-identical test articulated by our Supreme Court in *Wetrich*, a test we are duty bound to follow, the Oklahoma statute is not narrower or identical to the Kansas crime of battery of a law enforcement officer. See *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015) (Court of Appeals duty bound to follow Kansas Supreme Court precedent). Notably, the Oklahoma statute covers a larger category of victims than the Kansas statute and does not have a mental culpability element. In fact, it is possible that Clark could have violated the Oklahoma statute without violating the Kansas statute. Because the Oklahoma statute is broader than the comparable Kansas statute, the statutes are not comparable, and the district court improperly classified the Oklahoma conviction as a person crime.

B.      *Effect of the 2017 amendments to K.S.A. 22-3504*

The State claims that the 2017 amendments to K.S.A. 22-3504(3) preclude Clark from obtaining relief because they apply retroactively to prohibit the district court's correction of illegal sentences resulting from changes in the law that occur after a defendant is sentenced. This issue involves an interpretation of a statute, which is a question of law over which we have unlimited review. *Warren*, 307 Kan. at 612.

The relevant amendment states:  "A sentence is not an 'illegal sentence' because of a change in the law that occurs after the sentence is pronounced." K.S.A. 2018 Supp. 22-3504(3). The State contends that the adoption of the identical-or-narrower rule was a change in the law that occurred after Clark was sentenced and therefore cannot provide the basis for an illegal sentence.

Various panels of this court have rejected the State's argument, finding that the *Wetrich* court merely clarified existing law rather than changed it. See *State v. Smith*, 56 Kan. App. 2d 343, 352-54, 430 P.3d 58 (2018), *petition for rev. filed* September 26, 2018; *State v. Lewis*, No. 118,401, 2018 WL 6711263, at *5-6 (Kan. App. 2018) (unpublished opinion), *petition for rev. filed* January 16, 2019; *State v. Heard*, No. 118,569, 2018 WL 6580497, at *6 (Kan. App. 2018) (unpublished opinion), *petition for rev. filed* January 3, 2019; *State v. Jones*, No. 117,808, 2018 WL 4656409, at *8-10 (Kan. App. 2018) (unpublished opinion); *State v. Montes*, No. 117,916, 2018 WL 4039484, at *6 (Kan. App. 2018) (unpublished opinion), *petition for rev. filed* September 10, 2018. In rejecting a similar argument, the *Smith* panel noted:

> "Our Supreme Court's holding in *Wetrich* is a reinterpretation of an existing
> statute and not a change in the law . . . . [A] judicial construction of a statute is an
> authoritative statement of what the statute meant *before* as well as after the decision.
> [Citation omitted]. As previously stated, the *Wetrich* court found that the identical-or-

9

narrower test was the intent of the Legislature when it passed the KSGA based on the legislative history of the Act and the purposes and objectives of the sentencing guidelines. 307 Kan. at 561-62." *Smith*, 56 Kan. App. 2d at 353-54.

The *Smith* panel also noted that "[t]he bedrock constitutional principle that a court cannot engage in judicial fact-finding to increase a criminal defendant's sentence has been in force since *Apprendi* was decided in 2000, well before Smith was originally sentenced." 56 Kan. App. 2d at 354.

The State contends that *Smith* was wrongly decided. First, it points to the fact that the *Smith* panel relied in part on the United States Supreme Court's opinion in *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 114 S. Ct. 1510, 128 L. Ed. 2d 274 (1994). In *Rivers*, the Supreme Court noted that the caselaw it was relying on "did not overrule any prior decision" of the Court. 511 U.S. at 312. However, the *Smith* panel relied on the rule in *Rivers* that "'judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.'" *Smith*, 56 Kan. App. 2d at 354. Although the *Rivers* Court referenced the fact that the decision did not overrule any prior case law, it did not limit the application of this rule to those cases that also did not overrule any prior decision. 511 U.S. at 312-13. We find the distinction made by the State to be irrelevant.

The State also refers to the holding in *State v. Spencer Gifts*, 304 Kan. 755, 374 P.3d 680 (2016), where the district court relied on previous Kansas Supreme Court precedent in choosing to dismiss the criminal case based on the right to a speedy trial. The Supreme Court noted the general rule that "'when an appellate court decision changes the law, that change acts prospectively and applies only to all cases, state or federal, that are pending on direct review or not yet final on the date of the appellate court decision.'" 304 Kan. at 768. But the Supreme Court concluded that Spencer Gifts' right to a speedy trial vested with the district court's dismissal of the case, and the State's successful appeal

could not resurrect the charges. 304 Kan. at 768. The present case can be distinguished because it did not involve a right that vested at any point in time. Rather, Clark relies on K.S.A. 2018 Supp. 22-3504(1), which indicates that an illegal sentence may be corrected at any time.

We find the reasoning in *Smith* persuasive. The *Smith* panel determined that it did not need to decide the issue of whether the 2017 amendment to K.S.A. 22-3504 applied retroactively because it ruled that the holding in *Wetrich* did not amount to a change in the law. The principles of law set forth in *Apprendi* were in place in 2000, which was before Clark was sentenced in this case. Because the identical-or-narrower rule set forth in *Wetrich* merely clarified existing statutory language, meaning *Wetrich* did not change the law, the Legislature's amendment to K.S.A. 2018 Supp. 22-3504(3) does not preclude Clark's right to be resentenced for the incorrect classification of the Oklahoma conviction in his criminal history.

Because Clark's Oklahoma conviction was wrongly scored by the district court as a person crime, thus making his criminal history incorrect, his sentence is illegal, and the district court erred in denying his motion to correct an illegal sentence. Clark's sentence is therefore vacated, and the case is remanded for resentencing. Clark's criminal history score should be recalculated with his Oklahoma conviction scored as a nonperson felony.

Sentence vacated and case remanded for resentencing with the correct criminal history.