NOT DESIGNATED FOR PUBLICATION

No. 120,979

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SHANE MICHAEL CURRY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Seward District Court; CLINT B. PETERSON, judge. Opinion filed February 28, 2020. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Russell W. Hasenbank*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., LEBEN and BRUNS, JJ.

PER CURIAM: Shane Michael Curry appeals his sentence after being convicted of possession of methamphetamine, possession of marijuana, and possession of drug paraphernalia. The district court sentenced Curry using a criminal history score of B. His criminal history score was based in part on a presentence investigation (PSI) report that included a prior felony conviction in Oklahoma for domestic abuse—assault and battery. On appeal, Curry contends that the district court erred by classifying his prior Oklahoma conviction as a person felony. However, we find that the district court properly classified Curry's Oklahoma conviction as a person felony. Thus, we affirm.

1

FACTS

On January 9, 2019, Curry pled no contest to possession of methamphetamine, possession of marijuana, and possession of drug paraphernalia. His PSI report reflected two prior person felonies on his criminal record—a 2000 Kansas conviction for conspiracy to commit robbery and a 2013 Oklahoma conviction for domestic abuse— assault and battery. Accordingly, the PSI report listed Curry as having a criminal history score of B.

Curry did not object to his criminal history score at the sentencing hearing held on February 22, 2019. With a criminal history score of B, the presumptive sentencing range for Curry's primary crime of conviction—possession of methamphetamine—was 32 to 36 months' imprisonment. Ultimately, the district court sentenced Curry to a controlling sentence of 34 months' imprisonment. Thereafter, Curry timely appealed.

ANALYSIS

The sole issue presented on appeal is whether the district court erred in determining Curry's criminal history score by classifying his prior Oklahoma conviction for domestic abuse—assault and battery as a person felony. In response, the State argues that the district court properly scored Curry's prior conviction as a person felony. Under the circumstances presented in this case, we agree with the State that the district court appropriately classified Curry's prior Oklahoma conviction.

Classifying prior convictions for criminal history purposes requires statutory interpretation, which is a question of law over which we have unlimited review. *State v. Russ*, 309 Kan. 1240, 1242, 443 P.3d 1060 (2019). Under the revised Kansas Sentencing Guidelines Act (KSGA) (K.S.A. 2018 Supp. 21-6801 et seq.):

"(e)(1) Out-of-state convictions and juvenile adjudications shall be used in classifying the offender's criminal history.

(2) An out-of-state crime will be classified as either a felony or a misdemeanor according to the convicting jurisdiction.

. . . .

(3) The state of Kansas shall classify the crime as person or nonperson. In designating a crime as person or nonperson, comparable offenses under the Kansas criminal code in effect on the date of the current crime of conviction was committed shall be referred to. If the state of Kansas does not have a comparable offense in effect on the date the current crime of conviction was committed, the out-of-state crime shall be classified as a nonperson crime." K.S.A. 2018 Supp. 21-6811(e).

A criminal sentence is based on the severity level of a defendant's current crime and on the defendant's criminal history score. See K.S.A. 2018 Supp. 21-6805(a). The severity level of an offense is set by statute. So, a district court calculates a defendant's criminal history score by listing his or her prior criminal convictions or juvenile adjudications—including those committed out-of-state—and then classifying those convictions or adjudications as either person or nonperson offenses. Then, based on the number and type of convictions, the district court arrives at a defendant's criminal history score. K.S.A. 2018 Supp. 21-6809; K.S.A. 2018 Supp. 21-6810; K.S.A. 2018 Supp. 21-6811(e).

It is undisputed that the criminal history portion of Curry's PSI report includes a 2013 conviction in Oklahoma for "Domestic Abuse—Assault and Battery" in violation of 21 Okla. St. Ann. § 644(c) (2012). The parties also agree that domestic abuse—assault and battery is a felony under Oklahoma law. As a result, we turn to the question of whether there was a "comparable" Kansas crime in order to determine whether the district court should have classified the conviction as a person or nonperson offense. See K.S.A. 2018 Supp. 21-6811(e)(3). We make this determination by looking at comparable—not necessarily identical—Kansas offenses that were in effect at the time the defendant

3

committed his or her current crime of conviction. See *State v. Keel*, 302 Kan. 560, 590, 357 P.3d 251 (2015), *cert. denied* 136 S. Ct. 865 (2016).

In *State v. Wetrich*, 307 Kan. 552, 561-62, 412 P.3d 984 (2018), the Kansas Supreme Court explained:

> "[I]interpreting 'comparable offenses' in K.S.A. 2017 Supp. 21-6811(e)(3) to mean that the out-of-state crime cannot have broader elements than the Kansas reference offense—that is, using the identical-or-narrower rule—furthers the KSGA's goal of an even-handed, predictable, and consistent application of the law across jurisdictional lines. Cf. *Johnson*, 135 S. Ct. at 2562-63 (discussing goal of doctrine of stare decisis to effect even-handed, predictable, and consistent application of the law). Accordingly, we hereby adopt that interpretation. For an out-of-state conviction to be comparable to an offense under the Kansas criminal code, the elements of the out-of-state crime cannot be broader than the elements of the Kansas crime. In other words, the elements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced."

In making the comparison between an out-of-state crime and a comparable Kansas crime, we are to consider not only the plain language of the statute, but we are also to consider relevant statutory definitions and the interpretation of the statutory elements in state judicial opinions. *State v. Gensler*, 308 Kan. 674, 685, 423 P.3d 488 (2018). If Kansas does not have a comparable offense in effect on the date the current crime of conviction was committed, the out-of-state crime must be classified as a nonperson crime. Likewise, if the elements of the out-of-state crime are broader than the comparable Kansas offense, it must be classified as a nonperson crime regardless of the plain statutory language. *Wetrich*, 307 Kan. 552, Syl. ¶ 2.

Because there is no dispute that Curry's prior Oklahoma offense was a felony, we turn to the question of whether it should be classified as a person or nonperson felony for the purposes of determining his criminal history score. To classify his prior Oklahoma

4

conviction, we must determine whether Kansas had a comparable offense to the Oklahoma crime of domestic abuse—assault and battery on November 20, 2018—the date on which Curry committed his current crime of conviction.

Curry contends that the elements of the Oklahoma offense of domestic abuse—assault and battery under 21 Okla. St. Ann. § 644(c) are *broader* than the elements of the Kansas offenses of domestic battery (K.S.A. 2018 Supp. 21-5414[a]); battery (K.S.A. 2018 Supp. 21-5413[a]); and assault (K.S.A. 2018 Supp. 21-5412[a]). As such, he argues that under *Wetrich*, there is no Kansas offense comparable to the Oklahoma offense of domestic abuse—assault and battery. Curry thus claims that the district court erred in classifying his prior Oklahoma conviction as a person felony and that his criminal history score should have been C instead of B. See K.S.A. 2018 Supp. 21-6805(a).

In resolving the issue presented, we find the rationale of this court in *State v. Williams*, No. 114,778, 2019 WL 406296 (Kan. App. 2019) (unpublished opinion), to be persuasive. In *Williams*, the panel first compared the victim element of the Nevada domestic battery statute to the Kansas domestic battery statute. Although the panel found it possible that the defendant "could have committed the crime of domestic violence in Nevada against a person who was not 'a family or household member,' as the Kansas domestic battery statute requires," it did not end its analysis there. 2019 WL 406296, at *4. Instead, the panel went on to compare the Nevada domestic violence statute to the Kansas battery statute.

In *Williams*, the panel concluded that "the Nevada crime of domestic violence is comparable to the crime of battery in Kansas." 2019 WL 406296, at *5. In reaching this conclusion, the panel noted that "[a]lthough the Nevada crime of domestic violence broadly defines potential victims, those categories of victims all fall within the even broader category of victims in the Kansas battery statute—'another person.'" 2019 WL 406296, at *5. Thus, the panel found that "[t]he Nevada domestic violence statute is . . .

narrower than the Kansas battery statute, violation of which is a person crime." 2019 WL 406296, at *5.

Following the reasoning discussed in *Williams*, we find that the Oklahoma domestic abuse—assault and battery statute is comparable to the Kansas crime of battery as defined in K.S.A. 2018 Supp. 21-5413(a). The Oklahoma statute under which Curry was convicted provides that "[a]ny person who commits any assault and battery against a current or former intimate partner or a family or household member . . . shall be guilty of domestic abuse." 21 Okla. St. Ann. § 644(c). The Oklahoma battery statute prohibits "any willful and unlawful use of force or violence upon the person of another." 21 Okla. St. Ann. § 642 (2012). In Kansas, battery is either "knowingly or recklessly causing bodily harm to another person" or "knowingly causing physical contact with another person, when done in a rude or insulting manner." K.S.A. 2018 Supp. 21-5413(a)(1)-(2).

As the State correctly points out, the culpable mental states in Kansas are classified according to relative degrees, from highest to lowest, as follows: (1) intentionally; (2) knowingly; and (3) recklessly. K.S.A. 2018 Supp. 21-5202(b)(1)-(3). This means that a higher culpable mental state necessarily suffices to prove a lower culpable mental state. K.S.A. 2018 Supp. 21-5202(c). So, any "willful act" under the Oklahoma statute would also constitute a "knowing or reckless act" under the Kansas statute. Thus, the Kansas crime of battery has a narrower culpability element than the Oklahoma statute.

Curry also suggests that the Oklahoma statute is broader than the Kansas statute because no actual bodily harm must occur and the physical contact need not be done in "a rude, insulting or angry manner." See K.S.A. 2018 Supp. 21-5413(a)(2). In Kansas, one must either cause actual bodily harm to be convicted under K.S.A. 2018 Supp. 21-5413(a)(1) or cause "physical contact with another person when done in a rude, insulting or angry manner" to be convicted under K.S.A. 2018 Supp. 21-5413(a)(2). In Oklahoma,

6

battery is defined in Oklahoma as "any willful or unlawful use of force or violence upon the person of another." 21 Okla. St. Ann. § 642.

In *Williams*, the panel addressed a similar issue regarding whether battery statutes in Nevada and California—which are worded similarly to the Oklahoma battery statute— are comparable to the Kansas crime of battery under the identical or narrower test. Both the California and Nevada statutes analyzed in *Williams* define battery as "any willful and unlawful use of force or violence upon the person of another." See Cal. Penal. Code § 242 (West 2000); Nev. Rev. Stat. § 200.481(1)(a) (2003). As noted by the panel, California caselaw establishes that even a slight touching may constitute the "use of force or violence" if done in a rude or angry way. 2019 WL 406296, at *2. Similarly, in Nevada, only a slight unprivileged touching satisfies the force requirement. 2019 WL 406296, at *4. Consequently, the *Williams* panel concluded that both the California and Nevada statutes are comparable to the Kansas battery statute.

Returning to this case, we do not find "offensive touching" under Oklahoma law to be broader than a touching done in "a rude, insulting or angry manner" under Kansas law. We note that in *State v. Steele*, 778 P.2d 929, 931 (Okla. Crim. App. 1989), the Oklahoma Court of Criminal Appeals found that a slight touching satisfies the "force or violence" element of the Oklahoma crime of battery. Later, the United States Court of Appeals for the Tenth Circuit cited *Steele* for the proposition that an "offensive touching" satisfies the force element of the Oklahoma statute. *United States v. Smith*, 652 F.3d 1244, 1247 (10th Cir. 2011). For these reasons, we find no appreciable difference between an "offensive touching" in violation of the Oklahoma statute and a touching done in a "rude, insulting or angry manner" in violation of the Kansas statute.

As we recognized above, the Oklahoma crime of domestic abuse—assault and battery is comparable to the Kansas crime of simple battery. In fact, the Oklahoma crime is narrower is because it requires proof of both assault *and* battery. See 21 Okla. St. Ann.

7

§ 644(c). Under *Wetrich*, there is no requirement that the Oklahoma crime must be identical to or narrower than every Kansas crime encompassed within the Oklahoma statute.

In summary, we find it to be significant that one cannot violate the Oklahoma statute of domestic abuse—assault and battery without also violating the Kansas battery statute—which is a person crime. As a result, we find that the district court properly classified Curry's 2013 Oklahoma conviction for domestic abuse—assault and battery as a person felony in calculating his criminal history score for sentencing. We, therefore, conclude that the district court did not err in sentencing Curry here.

Affirmed.