NOT DESIGNATED FOR PUBLICATION

No. 123,338

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TRAVIS J. WHITEMAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Opinion filed March 11, 2022. Affirmed in part, sentence vacated, and case remanded with directions.

*Kristen B. Patty*, of Wichita, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., BRUNS and WARNER, JJ.

PER CURIAM:  Travis J. Whiteman appeals the district court's denial of his presentence motion to withdraw plea and the district court's denial of his motion challenging his criminal history score. Upon extensive review of the record before us, we find the district court did not abuse its discretion by denying Whitman's second motion to withdraw his plea. However, we find the district court improperly scored Whiteman's three prior Texas felonies for possession of child pornography as person felonies in Kansas to establish his criminal history score. Therefore, we affirm in part, vacate Whiteman's sentence, and remand for resentencing.

1

In March 2017, Travis J. Whiteman, a then-31-year-old man, posed as a 14-year-old boy on a dating website and requested a "sexy pic" from an account profile of a 14-year-old female. Whiteman specifically asked the girl to send a picture of her "tits." The record reflects the female profile either belonged to an undercover police officer or was flagged and then sent to a police detective. The State charged Whiteman with sexual exploitation of a child, in violation of K.S.A. 2016 Supp. 21-5510(a)(1), a severity level 5 person felony.

Whiteman waived his preliminary hearing and initially pled not guilty. Based on plea negotiations, Whiteman entered a plea of guilty to sexual exploitation of a child in October 2018. As part of the plea agreement, the State agreed not to charge Whiteman with prior violations of the Kansas Offender Registration Act (KORA), K.S.A. 2016 Supp. 22-4901 et seq., and further agreed to recommend the low sentencing number in the appropriate grid box. Prior to sentencing, Whiteman was allowed to withdraw his plea based on a mutual mistake between him and the State as to the application of the persistent sex offender special rule under K.S.A. 2016 Supp. 21-6804(j). The special rule required the district court to double the defendant's sentence under the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2016 Supp. 21-6801 et seq. Whiteman's case was then placed back on the trial docket.

In September 2019, Whiteman entered into a second plea agreement, and the district court conducted another plea hearing. Like his first plea hearing, Whiteman confirmed he had consumed no drugs, alcohol, or medication affecting his ability to understand the proceeding. The district court once again went over Whiteman's rights and the consequences of entering a plea. The district court specifically asked about Whiteman's satisfaction with his attorney:

"THE COURT: You are represented in this case by Miss McFerren and Miss Mitchell; is that correct?

"THE DEFENDANT: Yes, sir.

"THE COURT: Have you had enough time to discuss with these attorneys the charges filed against you, your rights in this case and the consequences of changing your plea?

"THE DEFENDANT: Yes, sir.

"THE COURT: Are you satisfied with the services of both attorneys in this case?

"THE DEFENDANT: Miss McFerren, I'm about halfway 50 percent with her.

"THE COURT: Okay. Do you believe that you are—that she has provided the type of services in this case that you are comfortable going forward with this plea?

"THE DEFENDANT: Yes, sir.

"THE COURT: Okay. Do you have anything further to discuss with Miss Mitchell at this point with regard to your rights in this case?

"THE DEFENDANT: No sir.

"THE COURT: Do you wish a break in this case to discuss anything further with your attorney?

"THE DEFENDANT: No, sir."

Whiteman confirmed it was solely his decision to sign the acknowledgment of rights and entry of plea, he had ample time to review the documents completely with his attorney, and he was aware of his possible sentence under the persistent sex offender special rule. Just as in Whiteman's first plea hearing, the district court explained the terms of the plea agreement on the record. In exchange for a successful guilty plea, the State agreed not to charge Whiteman for violating KORA and, though his sentence would double under the persistent sex offender special rule, the State would recommend the low number in the appropriate grid box as his sentence before it was doubled. Whiteman pled guilty.

The district court explained the State's charge against Whiteman as alleged in the charging document, just as it had done in Whiteman's first plea hearing. Whiteman stated

he believed the allegations in Count 1—sexual exploitation of a child—were true. The district court again found:

- Whiteman understood the nature of the charge against him, the consequences of his plea, and the possible penalties he faced by entering a guilty plea;
- Whiteman had knowingly, willingly, and voluntarily waived his constitutional rights, including the right to a jury trial, by entering a guilty plea; and
- a factual basis existed to accept Whiteman's plea.

The district court accepted Whiteman's guilty plea and convicted him of sexual exploitation of a child. The district court further determined it could still use the presentence investigation (PSI) report it had ordered after Whiteman's first guilty plea. The PSI report reflected Whiteman's criminal history score was A based on his three prior Texas convictions for possession of child pornography.

Whiteman timely filed a motion asking for a departure sentence, arguing he accepted responsibility for his actions, saving the State time by not trying his case before a jury; he was "'an excellent candidate for specific sex offender treatment available in the community,'" which would help reduce the likelihood of recidivism; and his entire criminal history arose out of a single case in 2013.

Whiteman also began an extensive pro se motion practice with a pro se "Notice to the Court . . . by and through jail house counsel," alleging a lack of timely and meaningful communication with his defense counsel, Dwayna McFerren. Whiteman claimed, among other things, his counsel did not account for Whiteman's desire to meaningfully participate in his defense; failed to consult with him when scheduling hearings; continued judicial proceedings without his consent; failed to respond to letters; and failed to provide requested documents related to his defense. Whiteman alleged his

4

counsel "seems to miss a lot of important rules or facts" and failed to inform him of all reasonable defenses.

Shortly after Whiteman filed his pro se notice to the court, his counsel filed a motion to challenge Whiteman's criminal history. The motion asserted the crimes listed in Whiteman's PSI report were in error and, even if the contested entries did exist, his prior Texas crimes should not be person felonies because there was no comparable Kansas crime. Whiteman then filed a pro se motion to withdraw his plea and correct his criminal history score. Whiteman essentially mimicked his counsel's motion challenging his criminal history score and alleged an improper criminal history score invalidated his plea agreement. His pro se motion was once again signed by "jail house counsel."

About 10 days later, Whiteman filed a pro se "letter to the court." Whiteman cited several cases from other jurisdictions and argued, in part, mere nudity did not constitute child pornography and his request for nude photographs was not unlawful. Whiteman acknowledged he made a poor decision but claimed his actions were not illegal. He also argued his request for the young girl to send him a photograph was vague and, by asking her to "show [Whiteman her] tits," he was not necessarily seeking a nude photograph.

Whiteman then filed a pro se motion for judgment of acquittal, essentially claiming actual innocence and arguing his request for mere nudity did not amount to child pornography. Whiteman cited several cases suggesting nudity, without more, constituted a protected expression under the First Amendment to the United States Constitution. He also contended the district court could not accept his plea because there was an insufficient factual basis to establish the crime.

In June 2020, the district court held a hearing on Whiteman's motion to withdraw his second plea of guilty. Whiteman testified he had seen his defense counsel two to three times before waiving his preliminary hearing. However, he provided conflicting

5

testimony. Whiteman explained his counsel never discussed waiving his preliminary hearing with him but also testified his counsel explained why he should consider waiving his preliminary hearing. Whiteman confirmed his counsel had provided him with the discovery in his case and discussed what could happen if he proceeded to jury trial.

Whiteman acknowledged he had accepted his original plea agreement with the State, the district court permitted him to withdraw his plea, and he later entered a second plea agreement. Whiteman again admitted he knew the potential penalties he could face when he entered the second plea agreement. He claimed his attorney never discussed with him whether he should plead or proceed to trial.

Whiteman claimed he sent letters to his counsel asking about potential defenses in his case and those letters were either ignored or lost in the mail. Whiteman admitted he met with his counsel in the jail about six times. He recalled the district judge went over the plea agreement with him at the second plea hearing and discussed the consequences of his plea but did not follow up on his dissatisfaction with counsel. Whiteman claimed his current dissatisfaction arose from unanswered questions about his plea and because his counsel had another attorney stand in for her at the hearing.

While in jail, Whiteman conducted his own research and wanted to withdraw his second plea based on a claim of actual innocence and competency of counsel for failing to bring any defenses to his attention. Whiteman admitted when he entered his second plea he wanted to do so, though reluctantly. Whiteman stated his counsel made no promises she would successfully obtain a lesser sentence but would still ask the district court.

McFerren was called to testify. Her testimony reflected that after she reviewed the discovery with Whiteman, Whiteman waived his preliminary hearing because it prevented the State from charging him with a more serious offense: specifically,

6

Whiteman had failed to register as a sex offender based on his prior Texas convictions for possession of child pornography. McFerren also discussed with Whiteman the possibility of working out a plea agreement.

McFerren received the first plea offer from the State and presented it to Whiteman. He agreed with it. McFerren testified it was common for a colleague to appear in court on her behalf to enter a plea in her cases. Still, before the hearing, McFerren personally went over the acknowledgment of rights and plea agreement with Whiteman in jail. Whiteman knew the State was not going to charge him for failing to register as a sex offender and determined he wanted to enter a plea. After the first plea agreement was withdrawn, McFerren tried to negotiate more favorable language in the plea agreement but was unable to do so. Whiteman signed the second plea agreement in the jail with McFerren present after it was again explained to him.

McFerren learned of Whiteman's dissatisfaction with her toward the end of her representation when she went to discuss the motion challenging his criminal history. Whiteman told McFerren he had filed a motion to have her removed as counsel but decided to withdraw that motion. McFerren never threatened Whiteman to enter a plea, never made promises outside the plea agreement, never promised a probation sentence, and never promised a successful criminal history challenge.

McFerren discussed the risks associated with a jury trial and the fact the State could present evidence of his prior Texas offenses, which could be devastating to his defense. Based on the information McFerren provided, Whiteman again chose to enter a plea. Whiteman never proffered a claim of actual innocence to McFerren. The district court requested a transcript of Whiteman's second plea hearing and continued the hearing on Whiteman's motion to withdraw his plea.

In a written motion minutes sheet, the district court found McFerren's testimony was credible and Whiteman's was not. The district court specifically explained:

"First, the Court finds that Ms. McFerren is competent counsel. Ms. McFerren has been a criminal defense attorney in the Public Defender's office for 4 1/2 years. She met with [Defendant] on repeated occasions, as confirmed by Defendant, and guided him through not one but two plea hearings. . . . Defendant testified that he was '50/50' with Ms. McFerren, when the Court inquired at the second plea hearing whether he was satisfied with Ms. McFerren as his counsel. At the hearing on the Motion to Withdraw Plea, Defendant testified that the Court did not follow up or inquire about this statement. Defendant's statement is not credible. The record reflects that the Court followed up with three additional questions to clarify that Defendant was satisfied with Ms. McFerren, and proceeded only after Defendant assured the Court that he was comfortable going forward, that he had nothing further to discuss with counsel, and that he did not wish a break in the proceedings to speak to counsel. Defendant's testimony in contradiction to the record is not credible. Ms. McFerren discussed defenses and his criminal history with the Defendant.

"Further, Ms. McFerren is credible when she testified that Defendant only now brings up the topic of actual innocence, and never brought up the subject throughout the two plea hearings. It is clear that Defendant had all of the discovery, had a chance to review it, and met with Ms. McFerren in the jail at least six times.

"Finally, the Court went over the [Acknowledgment] of Rights and Entry of Plea form with Defendant on the record. He signed the document and acknowledged that he went over it with counsel and understood it.

"Second, there is no evidence that Defendant was misled, coerced, mistreated or taken advantage of. Defendant knew his criminal history score was A, knew he would be deemed a persistent sex offender, and that his status [as] such would double his sentence.

"Third, the plea was fairly and understandingly made. The parties agreed that Defendant should be allowed to withdraw the first plea, and the Court ordered it. The benefit for Defendant was that his rights were explained not once but twice. He knew his rights and chose to enter the second plea. His claims about discovering defenses after the plea was entered is speculative. These do not persuade this Court that his plea was not made fairly and understandingly."

8

The district court denied Whiteman's motion to withdraw his second plea, finding he failed to show good cause under K.S.A. 2019 Supp. 22-3210(d)(1). Whiteman's new counsel filed a motion for judgment of acquittal, adopting the arguments Whiteman had made in his pro se motion. Whiteman's counsel also filed a motion to find KORA registration requirements cruel and unusual punishment.

The district court granted Whiteman a downward durational departure as the parties agreed to in the plea agreement and sentenced him based on his criminal score of A to 61 months' imprisonment, which was then doubled under the persistent sex offender special rule for a controlling term of 122 months' imprisonment. The district court reasoned the harm was less than typical as it did not appear Whiteman received the photograph he was seeking, and the young girl may have been an undercover police officer. The district court denied Whiteman's motion to find KORA registration requirements cruel and unusual punishment, his motion for judgment of acquittal, and his motion challenging his criminal history score.

ANALYSIS

I.      THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION TO DENY WHITEMAN'S
        SECOND PRESENTENCE MOTION TO WITHDRAW HIS PLEA.

Whiteman argues he was unable to discuss any potential defense with his trial counsel despite admitting he consulted with his attorney multiple times. After entering his second plea, Whiteman believed he discovered a potential defense his attorney failed to discuss with him. He explained in his second motion to withdraw his plea he believed the facts alleged in the probable cause affidavit did not constitute a crime and the denial of his motion to withdraw his plea must be reversed.

The State responds Whiteman's argument is meritless as the factual basis for his plea did not stem from the probable cause affidavit. The State contends the factual basis for Whiteman's plea was established by the district court reading the complaint and Whiteman agreeing the allegations were true.

When the district court denies a defendant's motion to withdraw a plea before sentencing, the defendant must establish on appeal how the district court abused its discretion in denying the motion. "A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. [Citation omitted.]" *State v. Frazier*, 311 Kan. 378, 381, 461 P.3d 43 (2020). "Appellate courts do not reweigh the evidence or assess witness credibility. Instead, appellate courts give deference to the trial court's findings of fact. [Citation omitted.]" *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011). Whiteman bears the burden to establish the district court erred in denying his presentence motion to withdraw his plea. See *State v. Schow,* 287 Kan. 529, 541, 197 P.3d 825 (2008). Further,

> "[e]ntry of a plea of guilty or nolo contendere necessarily implies acknowledgment by all concerned—the defendant, the State, and the court—that a jury could go either way and that a risk-benefit analysis has taken place on both sides. The prosecution and the defense have something to gain and something to lose in any plea bargain." *State v. Green*, 283 Kan. 531, 547, 153 P.3d 1216 (2007).

"[A] defendant should not get relief from a plea decision simply because he or she determines, in hindsight, that it was not the most intelligent course of action." *Schow*, 287 Kan. at 542.

Under K.S.A. 2020 Supp. 22-3210(d)(1), a guilty plea may be withdrawn before sentencing "for good cause shown and within the discretion of the court . . . ." When determining whether a defendant has shown good cause, a district court should consider

"whether '(1) the defendant was represented by competent counsel, (2) the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) the plea was fairly and understandingly made.' [Citations omitted.]" *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). Other non-*Edgar* factors that could impact a plea withdrawal should not be ignored. *Frazier*, 311 Kan. at 381. A claim of innocence may support good cause to withdraw a plea. *State v. Garcia*, 295 Kan. 53, 63, 283 P.3d 165 (2012).

On appeal, Whiteman does not maintain his prior arguments alleging incompetent counsel, nor does he claim he was misled, coerced, mistreated, or unfairly taken advantage of. Whiteman, therefore, waives and abandons any such argument on appeal as it specifically relates to the first two *Edgar* factors. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) (issue not briefed deemed waived or abandoned).

Whiteman now contends he can challenge the factual basis supporting his plea through a motion to withdraw plea. This argument falls under the third *Edgar* factor about whether the plea was fairly and understandingly made. We interpret Whiteman's argument on appeal as a challenge of the sufficiency of the factual basis for his plea and potentially setting forth an argument claiming actual innocence.

Whiteman's brief fails to directly assert a claim of actual innocence, and any incidental claim of actual innocence is vague and convoluted. This potential claim, if one exists at all, is not adequately briefed and, therefore, waived or abandoned. See *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019).

This leaves us with Whiteman's claim the factual basis to support his plea was insufficient. The district court simply explained, "[T]here [was] a factual basis put forth at the time of the plea and [Whiteman] agreed with that." Whiteman agreed with the State's allegations in the charging document.

We observe that Whiteman's argument is not well developed. The issue is complicated by the fact Whiteman was clearly aware of the factual basis supporting his plea, as he argued in a pro se motion to the district court that the probable cause affidavit was insufficient to support his plea, but his plea was not based on the probable cause affidavit. Whiteman has not properly framed or briefed the argument regarding the sufficiency of the allegations in the charging document as a factual basis for his plea. His brief on this issue is limited to one paragraph. Accordingly, we find Whiteman waived or abandoned his claim by failing to adequately brief the issue on appeal. See *Salary*, 309 Kan. at 481.

The record reflects that after Whiteman was allowed to withdraw his first plea, Whiteman knew the basis of the charges against him, the benefit he was receiving by his plea, and the potential penalties, including the special rule which would double his sentence. Whiteman had reviewed the acknowledgment of rights twice over the span of two years with his attorney and went over the plea agreement with two different district judges. Both district judges advised Whiteman of his rights, and Whiteman entered a guilty plea both times. Whiteman, while relying on the third *Edgar* factor—the plea was not fairly and understandingly made—has not met his burden to show the district court abused its discretion when it denied his presentence motion to withdraw his guilty plea.

II.     WHITEMAN'S CRIMINAL HISTORY SCORE IS INCORRECT.

Whiteman next argues the district court erred in scoring his three Texas possession of child pornography convictions as person felonies when it calculated his criminal history score and in classifying him as a persistent sex offender. Whiteman asks us to vacate his sentence and remand to the district court for a new sentencing hearing. The State responds Whiteman's prior Texas convictions for possessing child pornography were properly classified as person felonies. The State explains the Texas offense of

possession of child pornography Whiteman was convicted of is identical to or narrower than the Kansas offense of sexual exploitation of a child.

Whether a sentence is illegal under K.S.A. 2020 Supp. 22-3504 turns on interpretation of the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2020 Supp. 21-6801 et seq. See *State v. Dickey*, 305 Kan. 217, 220, 380 P.3d 230 (2016). An "'[i]llegal sentence,'" as defined by K.S.A. 2020 Supp. 22-3504(c)(1), is "a sentence: [i]mposed by a court without jurisdiction; that does not conform to the applicable statutory provision, either in character or punishment; or that is ambiguous with respect to the time and manner in which it is to be served at the time it is pronounced." To determine whether a prior conviction should be designated as a person or nonperson offense involves interpretation of the KSGA, which is a question of law subject to unlimited review. *State v. Wetrich*, 307 Kan. 552, 555, 412 P.3d 984 (2018).

*Calculating criminal history score based on a comparable offense in another state*

All felony convictions and adjudications occurring prior to the current sentencing are considered when calculating a criminal history score. *Wetrich*, 307 Kan. at 555. "If a crime is a felony in the convicting jurisdiction, it will be counted as a felony in Kansas." K.S.A. 2020 Supp. 21-6811(e)(2)(A). The parties agree Whiteman's Texas convictions for possession of child pornography under Tex. Penal Code § 43.26 (2012) were felony offenses, making the crimes felonies in Kansas for calculating his criminal history score. See Tex. Penal Code § 43.26(d).

A crime is also designated as person or nonperson. K.S.A. 2020 Supp. 21-6811(e)(3). When considering an out-of-state conviction for classifying a defendant's criminal history score, the district court must refer to the Kansas Criminal Code in effect on the date the current crime of conviction was committed to find a comparable offense. An out-of-state conviction is considered a nonperson crime if there is no comparable

13

Kansas offense in effect on the date the defendant committed the current crime of conviction. K.S.A. 2020 Supp. 21-6811(e)(3)(A). Our Supreme Court explained that "the elements of the out-of-state crime cannot be broader than the elements of the Kansas crime. In other words, the elements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced." *Wetrich*, 307 Kan. at 562.

Whiteman's PSI report showed he was convicted in August 2013 of three counts of possession of child pornography under Tex. Penal Code Ann. § 43.26 for acts committed in August 2012. The State supplemented the record on appeal to include certified documents from Williamson County, Texas, regarding Whiteman's three prior Texas convictions. At Whiteman's sentencing hearing, the State admitted the certified documents without objection. The district court determined the Kansas crime of sexual exploitation of a child was a comparable Kansas offense under *Wetrich*.

The State correctly points out Tex. Penal Code Ann. § 43.26 contained two separate crimes—possession of child pornography under subsection (a) and promotion of child pornography under subsection (e). On appeal, both parties reference Whiteman's prior Texas convictions fell under Tex. Penal Code Ann. § 43.26(a), possession of child pornography.

To determine whether the district court should classify Whiteman's Texas possession of child pornography convictions as person or nonperson offenses, the elements of the Texas crime must be compared with the elements of the comparable Kansas offense in March 2017, when Whiteman committed his current crime of conviction.

Tex. Penal Code Ann. § 43.26(a) stated the crime of possession of child pornography has been committed if:

14

"(1) the person knowingly or intentionally possesses visual material that visually depicts a child younger than 18 years of age at the time the image of the child was made who is engaging in sexual conduct; and

"(2) the person knows that the material depicts the child as described by Subdivision (1)."

K.S.A. 2016 Supp. 21-5510(a)(2) defined sexual exploitation of a child as: "[P]ossessing any visual depiction of a child under 18 years of age shown or heard engaging in sexually explicit conduct with intent to arouse or satisfy the sexual desires or appeal to the prurient interest of the offender or any other person."

Whiteman argues the Texas crime of possession of child pornography is not comparable to the Kansas crime of sexual exploitation of a child. Specifically, Whiteman claims Texas' definition of sexual conduct is broader than Kansas' definition of sexually explicit conduct.

In Texas:

- "'Sexual conduct' means sexual contact, actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals, the anus, or any portion of the female breast below the top of the areola." Tex. Penal Code Ann. § 43.25(a)(2) (2012).

- "'Simulated' means the explicit depiction of sexual conduct that creates the appearance of actual sexual conduct and during which a person engaging in the conduct exhibits any uncovered portion of the breasts, genitals, or buttocks." Tex. Penal Code Ann. § 43.25(a)(6) (2012).

- "'Deviate sexual intercourse' means any contact between the genitals of one person and the mouth or anus of another person." Tex. Penal Code Ann. § 43.01(1) (2012).

- "'Sexual contact' means any touching of the anus, breast, or any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person." Tex. Penal Code Ann. § 43.01(3) (2012).

In Kansas:

- "'Sexually explicit conduct' means actual or simulated: Exhibition in the nude; sexual intercourse or sodomy, including genital-genital, oral-genital, anal-genital or oral-anal contact, whether between persons of the same or opposite sex; masturbation; sado-masochistic abuse with the intent of sexual stimulation; or lewd exhibition of the genitals, female breasts or pubic area of any person." K.S.A. 2016 Supp. 21-5510(d)(1).

- "'[N]ude' means any state of undress in which the human genitals, pubic region, buttock or female breast, at a point below the top of the areola, is less than completely and opaquely covered." K.S.A. 2016 Supp. 21-5510(d)(4).

Whiteman's argument focuses on the term sexual conduct. In Texas, sexual conduct includes sexual bestiality, but sexually explicit conduct in Kansas does not include sexual bestiality. Whiteman admits the Kansas statute for sodomy, K.S.A. 2016 Supp. 21-5501(b), includes "oral or anal copulation or sexual intercourse between a person and an animal," but the Kansas Legislature did not include such definition in the sexual exploitation of a child statute.

16

Whiteman is correct the Texas statute for possession of child pornography under which Whiteman was convicted includes bestiality, making it broader than the comparable Kansas statute which does not include such sexual conduct. Compare Tex. Penal Code Ann. § 43.25(a)(2) with K.S.A. 2016 Supp. 21-5510(d)(1). The State included the charging documents from Whiteman's prior Texas convictions in the record on appeal, but, under *State v. Gales*, 312 Kan. 475, 485, 476 P.3d 412 (2020), we must compare the statutes on an elements-to-elements basis without reference to the evidence surrounding prior convictions. Based solely on an elements-to-elements comparison, without reference to the evidence surrounding Whiteman's prior Texas convictions, the Texas statute is broader than the Kansas statute. Therefore, the district court erred in rejecting Whiteman's challenge to his criminal history score because the conduct underlying his three prior out-of-state convictions for possession of child pornography was broader than the conduct prohibited by the comparable Kansas statute—here, K.S.A. 2016 Supp. 21-5510(a)(2)—in effect at the time of his current crime of conviction. See *Wetrich*, 307 Kan. at 562. The district court improperly scored Whiteman's three Texas convictions for possession of child pornography as person felonies to establish his criminal history score. Accordingly, we vacate Whiteman's sentence and remand to the district court to resentence Whiteman with his prior Texas child pornography convictions to be scored as nonperson felonies.

We pause to note that we appreciate the logic of the State's critique of *Wetrich* as it applies to crimes committed directly involving another person. But, as Whiteman correctly notes in his reply brief, we must apply *Wetrich* as we are duty-bound to follow our Supreme Court precedent unless there is some indication our Supreme Court is departing from its previous position. See *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). We observe no indication our Supreme Court intends to depart from its previous position in *Wetrich*. Here, this is especially concerning because the conduct prohibited by Tex. Penal Code Ann. § 43.26 is essentially identical to the conducted prohibited by K.S.A. 2016 Supp. 21-5510(a)(2), except for the additional conduct

17

included in the Texas statute—depictions of a child engaged in "sexual bestiality." Tex. Penal Code Ann. § 43.25(a)(2).

As previously noted, under K.S.A. 2016 Supp. 21-5501(b), sexual acts between a person and an animal would constitute the person felony of criminal sodomy. Thus, it seems something of an absurd result that we are compelled to score Whiteman's prior Texas convictions as nonperson felonies simply because the Texas statute includes *additional* conduct that would be a person felony under another Kansas statute. In other words, because the Texas statute includes conduct that is a person felony under two different Kansas statutes, under *Wetrich*, we are forced to score it as a nonperson felony. We seriously question whether the Legislature intended such a result, especially given our Supreme Court's recognition the KSGA should be interpreted in a manner consistent with the Legislature's intent "for sentences to reflect ever-evolving sentencing philosophies and correction goals." *State v. Keel*, 302 Kan. 560, 588, 357 P.3d 251 (2015). We hope our Supreme Court will provide appropriate guidance for cases such as this, which seemingly are not expressly contemplated by the KSGA or our Supreme Court's interpretation of the KSGA under *Wetrich*.

Affirmed in part, sentence vacated, and case remanded for resentencing.

18