IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 112,361

STATE OF KANSAS,
*Appellee*,

v.

ROY D. WETRICH,
*Appellant.*

SYLLABUS BY THE COURT

1.

The classification of prior offenses for criminal history purposes involves the interpretation of the revised Kansas Sentencing Guidelines Act; statutory interpretation is a question of law subject to unlimited review.

2.

Prior out-of-state convictions are used in the calculation of a person's criminal history score under the revised Kansas Sentencing Guidelines Act. The State of Kansas shall classify the out-of-state conviction as a person or nonperson offense by referring to comparable offenses under the Kansas criminal code in effect on the date the current crime of conviction was committed. If the State of Kansas does not have a comparable offense in effect on the date the current crime of conviction was committed, the out-of-state conviction shall be classified as a nonperson crime.

3.

For an out-of-state conviction to be comparable to an offense under the Kansas criminal code, within the meaning of K.S.A. 2017 Supp. 21-6811(e)(3) (the amended version of K.S.A. 21-4711[e]), the elements of the out-of-state crime cannot be broader

1

than the elements of the Kansas crime. In other words, the elements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced.

4.

Kansas has no comparable offense to the Missouri crime of second-degree burglary, and, therefore, a prior conviction for that Missouri offense must be classified as a nonperson offense.

Review of the judgment of the Court of Appeals in an unpublished opinion filed January 15, 2016. Appeal from Johnson District Court; SARA WELCH, judge. Opinion filed March 9, 2018. Judgment of the Court of Appeals vacating the sentence and remanding for resentencing is affirmed. Judgment of the district court is reversed, sentence is vacated, and case is remanded with directions.

*Korey A. Kaul*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Shawn E. Minihan*, assistant district attorney, argued the cause, and *Steven J. Obermeier*, senior deputy district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: The State of Kansas seeks review of the Court of Appeals' determination that the district court incorrectly sentenced Roy D. Wetrich by misclassifying a 1988 Missouri burglary conviction as a person felony and, thereby, miscalculating his criminal history score as C, when it should have been E. The State contends that the panel did not consider all of the applicable Missouri statutory provisions and that it ignored the precedent set by an earlier Court of Appeals opinion. We affirm the result reached by the Court of Appeals, vacate the sentence imposed, and

remand for the district court to impose a correct sentence for a person with a criminal history score of E.

For acts committed between January 1, 2009 and April 24, 2009, Wetrich was convicted by a Johnson County jury of kidnapping, two counts of aggravated assault, criminal possession of a firearm, possession of marijuana, violation of a protective order, domestic battery, and intimidation of a witness. The district court sentenced Wetrich to a controlling sentence of 124 months in prison, based on a criminal history score of C.

Before sentencing, Wetrich attempted to challenge the person-felony classification of a prior 1988 Missouri conviction for burglary used in his criminal history score. The district court ruled that, because Wetrich had previously unsuccessfully challenged the classification of that Missouri conviction in a different case, he was collaterally estopped from the current challenge. The Court of Appeals reversed that ruling and ordered the district court to conduct a resentencing hearing at which Wetrich could challenge the classification of the prior Missouri conviction. *State v. Wetrich*, 49 Kan. App. 2d 34, 43-44, 304 P.3d 346, *rev. denied* 298 Kan. 1208 (2013).

At the resentencing hearing on remand, Wetrich testified that the structure he burglarized in Missouri was a mobile home but that, at the time of entry, the structure was not being used as a residence and was unoccupied. Nevertheless, the district court compared the definition of "dwelling" in K.S.A. 21-3110(7) with Missouri's statutory definition of "inhabitable structure" and found them to be sufficiently analogous to find the Missouri burglary conviction comparable to Kansas' crime of burglary of a dwelling. Consequently, the district court held that Wetrich's prior Missouri burglary conviction was properly scored as a person felony, resulting in a total criminal history score of C.

3

Again, Wetrich appealed to the Court of Appeals, and that court again disagreed with the district court. Applying *State v. Dickey,* 301 Kan. 1018, 1021, 350 P.3d 1054 (2015), the panel first compared the Missouri burglary statute, Mo. Rev. Stat. § 569.170 (1986), with the Kansas burglary statute in effect when Wetrich committed his current crime of conviction in 2009, K.S.A. 21-3715. It found that the Missouri statutory definition of "inhabitable structure" was broader than the K.S.A. 21-3110(7) definition of "dwelling" and that the Missouri language contained no element concerning the use of the structure as a dwelling. *State v. Wetrich*, No. 112,361, 2016 WL 197808, at *4-5 (Kan. App. 2016) (unpublished opinion).

The panel noted that Mo. Rev. Stat. § 569.170 was a divisible statute because it provided alternative elements for committing the crime. Therefore, pursuant to *Descamps v. United States*, 570 U.S. 254, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013), the district court might have been permitted to engage in a limited review of documents to determine whether the Missouri conviction matched a Kansas crime. But in this case, the panel determined that none of the alternative elements in the Missouri statute matched the Kansas definition of "dwelling," and the district court could not look outside those statutory elements to engage in the type of judicial fact-finding which was held to be prohibited by *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Descamps. Wetrich*, 2016 WL 197808, at *5. Accordingly, the Court of Appeals vacated Wetrich's sentence and remanded for resentencing with the correct criminal history score of E. 2016 WL 197808, at *5-6.

The State petitioned for review, asserting that the panel had cited to an incorrect section of the Missouri statute and pointing out that in *State v. Hill*, No. 112,545, 2015 WL 8590700 (Kan. App. 2015) (unpublished opinion), *rev. granted* 305 Kan. 1255 (2016), another Court of Appeals panel had previously reached a different result on the comparability of the Missouri burglary statute. Given a split of authority among Court of Appeals panels, we granted the State's petition.

4

Wetrich was convicted of on-grid crimes, meaning that each of his presumptive sentences under the revised Kansas Sentencing Guidelines Act (KSGA) was contained in a two-dimensional sentencing grid, composed of a vertical axis reflecting the severity level of the crime committed (scored from 10 to 1 on the nondrug offense grid and from 4 to 1 on the drug offense grid) and a horizontal axis reflecting the defendant's history of prior criminal convictions (scored from I to A). K.S.A. 2008 Supp. 21-4704 (nondrug offense grid); K.S.A. 2008 Supp. 21-4705 (drug offense grid). Here, the crime severity level is not in dispute, but rather the issue on appeal involves the calculation of Wetrich's criminal history score that is employed on the horizontal axis of the sentencing grid. Specifically, the question is whether an out-of-state conviction is to be classified as a person felony or as a nonperson felony because crimes classified as person felonies are given the most weight in the criminal history calculus. K.S.A. 2008 Supp. 21-4704; see K.S.A. 21-4710.

*Standard of Review*

Classification of prior offenses for criminal history purposes involves interpretation of the KSGA; statutory interpretation is a question of law subject to unlimited review. *State v. Keel*, 302 Kan. 560, 571-72, 357 P.3d 251 (2015). Whether a district court's application of the KSGA violated constitutional rights presents a question of law subject to unlimited review. *Dickey*, 301 Kan. at 1036.

*Analysis*

In calculating a criminal history score, all felony convictions and adjudications and certain misdemeanor convictions and adjudications, occurring prior to the current sentencing, are considered. K.S.A. 21-4710(a). Prior burglary convictions are specifically addressed in K.S.A. 2017 Supp. 21-6811(d)(1) (previously K.S.A. 21-4711[d][1]), which provides for the scoring as a person felony of any prior conviction or adjudication that "was classified as a burglary as defined in K.S.A. 21-3715(a), prior to its repeal, or K.S.A. 2017 Supp. 21-5807(a)(1), and amendments thereto." We considered the application of the prior burglary provision in *Dickey*.

*Dickey* noted that,

"in order to classify a prior burglary conviction or adjudication as a person offense under K.S.A. 2014 Supp. 21-6811(d), a sentencing court must find that the prior burglary involved a 'dwelling,' *i.e.,* 'a building or portion thereof, a tent, a vehicle or other enclosed space which is used or intended for use as a human habitation, home, or residence.' K.S.A. 2014 Supp. 21-5111(k)." 301 Kan. at 1021.

But in order to avoid the constitutional prohibition against enhancing a sentence through judicial fact-finding announced in *Apprendi*, *Dickey* held that the dwelling requirement must have been an element of the prior offense, rather than a fact found by the sentencing court in the current case. 301 Kan. at 1036, 1039. Because Dickey had a prior juvenile adjudication for burglary in 1992, when the definition of the offense did not include an element requiring the burglarized structure to be a dwelling, the prior offense had to be scored as a nonperson felony. 301 Kan. at 1039-40. *Dickey* also relied on the methodology employed by the Supreme Court in *Descamps* to constitutionally construe a federal statute. 301 Kan. at 1039.

Here, however, another subsection of K.S.A. 2017 Supp. 21-6811 (the amended version of K.S.A. 21-4711) applies. Out-of-state convictions are specifically addressed in K.S.A. 2017 Supp. 21-6811(e), to-wit:

"(e)(1) Out-of-state convictions and juvenile adjudications shall be used in classifying the offender's criminal history.

(2) An out-of-state crime will be classified as either a felony or a misdemeanor according to the convicting jurisdiction:

(A) If a crime is a felony in another state, it will be counted as a felony in Kansas.

(B) If a crime is a misdemeanor in another state, the state of Kansas shall refer to the comparable offense in order to classify the out-of-state crime as a class A, B or C misdemeanor. If the comparable misdemeanor crime in the state of Kansas is a felony, the out-of-state crime shall be classified as a class A misdemeanor. If the state of Kansas does not have a comparable crime, the out-of-state crime shall not be used in classifying the offender's criminal history.

(3) The state of Kansas shall classify the crime as person or nonperson. In designating a crime as person or nonperson, comparable offenses under the Kansas criminal code in effect on the date the current crime of conviction was committed shall be referred to. If the state of Kansas does not have a comparable offense in effect on the date the current crime of conviction was committed, the out-of-state conviction shall be classified as a nonperson crime."

Wetrich's burglary in Missouri was classified as a felony in that state, making it a felony here. K.S.A. 2017 Supp. 21-6811(e)(2)(A) [formerly K.S.A. 21-4711(e)]. As noted above, on the date the current crime of conviction was committed, the only burglaries in Kansas that were classified as person crimes had to involve entering into or remaining within a dwelling. See K.S.A. 21-3715. Consequently, in order to score

Wetrich's Missouri burglary conviction as a person felony for Kansas criminal history purposes, the Missouri crime must be comparable to Kansas' burglary of a dwelling offense at the time the current crime of conviction was committed. See *Keel*, 302 Kan. at 590 ("Thus, the classification of a prior conviction or juvenile adjudication as a person or nonperson offense for criminal history purposes under the KSGA is determined based on the classification in effect for the comparable Kansas offense at the time the current crime of conviction was committed.").

The conflict among Court of Appeals panels applying 21-6811(e)(3) focuses on how similar the elements of the foreign crime must be to those of the Kansas reference crime in order to meet the statutory requirement of comparability. *Dickey* cited to the *Descamps* language which said that, to be a sentence-enhancing predicate offense, the elements of the prior conviction had to be the same as, or narrower than, the generic offense at issue in that case. *Dickey*, 301 Kan. at 1037. The clear implication in *Dickey* is that constitutional constraints would require that, to be a comparable offense, a prior out-of-state crime must have identical or narrower elements than the Kansas offense to which it is being compared.

On the other hand, at least one panel of the Court of Appeals has opined that, although *Dickey* reached the correct result based on *Apprendi* grounds, the "identical-or-narrower rule is a federal rule governing interpretation of the Armed Career Criminal Act," rather than being required by constitutional constraints. *State v. Moore*, 52 Kan. App. 2d 799, 813-14, 377 P.3d 1162 (2016). Further, *Moore* declared that "there's no [Kansas] statutory requirement that an out-of-state offense be identical or narrower than the comparable Kansas offense" and observed that *Dickey* had not overruled "past Kansas caselaw holding that the comparable Kansas offense doesn't have to be identical to the prior-conviction statute and that the question is whether the statutes prohibit similar conduct. See, *e.g.*, *Williams*, 299 Kan. at 873 (quoting *Vandervort*, 276 Kan. at 179); *State v. Riolo*, 50 Kan. App. 2d at 353 (quoting *Barajas*, 43 Kan. App. 2d at 643)." 52

8

Kan. App. 2d at 813-14. The *Vandervort* court suggested that the Kansas crime with "the closest approximation" to the out-of-state crime was a comparable offense. *State v. Vandervort*, 276 Kan. 164, 179, 72 P.3d 925 (2003).

*Moore* did not cite to *Mathis v. United States*, 579 U.S. ____, 136 S. Ct. 2243, 195 L. Ed. 2d 604 (2016), presumably because *Mathis* was filed just one day before *Moore*. *Mathis* held that, because the elements of Iowa's burglary law were broader than those of generic burglary, Mathis' prior Iowa burglary convictions could not be used to enhance his sentence under the federal Armed Career Criminal Act (ACCA). 136 S. Ct. at 2257. In the process, *Mathis* opined that the strict elements focus was not only required by the language of the federal statute, but also because of "serious Sixth Amendment concerns" and fairness to defendants. 136 S. Ct. at 2252-53. *Mathis* also distinguished between alternative elements and alternative means of proving a single element, noting that alternative means or facts were not subject to the modified categorical approach discussed in *Descamps*. 136 S. Ct. at 2256.

Nevertheless, the extent to which the federal identical-or-narrower rule is constitutionally mandated after *Apprendi*, *Descamps*, and *Mathis* is a question we need not decide today. We can resolve the issue presented here on the basis of statutory interpretation. See *Wilson v. Sebelius*, 276 Kan. 87, 91, 72 P.3d 553 (2003) ("Appellate courts generally avoid making unnecessary constitutional decisions. Thus, where there is a valid alternative ground for relief, an appellate court need not reach constitutional challenges to statutes."); see also *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 658, 367 P.3d 282 (2016) ("Here, by first deciding the issue of compliance with statutory procedures, we eliminate the need to determine whether the proposed ordinance is constitutional under the Home Rule Amendment."); *State v. Sharp*, 305 Kan. 1076, 1077-78, 390 P.3d 542 (2017) (affirming Court of Appeals holding that a police officer lacked reasonable suspicion to conduct traffic stop but vacating holding regarding constitutionality of statute because "'[a]ppellate courts generally avoid making

9

unnecessary constitutional decisions. . . . [W]here there is a valid alternative ground for relief, an appellate court need not reach a constitutional challenge.'" [quoting *Schmidt*, 303 Kan. 650, Syl. ¶ 3]).

The touchstone of statutory construction is that legislative intent governs where it can be ascertained. *State v. Williams*, 298 Kan. 1075, 1079, 319 P.3d 528 (2014). Our first attempt at ascertaining legislative intent involves reading the language of the statute, giving common words their ordinary meanings. *State v. Phillips*, 299 Kan. 479, 495, 325 P.3d 1095 (2014). But where the statute's language or text is unclear or ambiguous, we can employ canons of construction or legislative history to divine the Legislature's intent. 299 Kan. at 495.

To reiterate, the Kansas statutory provision that we are construing states, with emphases added:

"(3) The state of Kansas shall classify the crime as person or nonperson. In designating a crime as person or nonperson, *comparable offenses* under the Kansas criminal code in effect on the date the current crime of conviction was committed shall be referred to. If the state of Kansas does not have a *comparable offense* in effect on the date the current crime of conviction was committed, the out-of-state conviction shall be classified as a nonperson crime." (Emphases added.) K.S.A. 2017 Supp. 21-6811(e)(3).

We first consider whether the common meaning of the adjective "comparable" renders this provision unclear or ambiguous. Turning to the usual sources for the common meaning of common terms—dictionaries and thesauruses—we note some variances in the meaning of comparable. For instance, Webster's New World College Dictionary 303 (5th ed. 2016) defines "comparable" as: "1. that can be compared 2. worthy of comparison." That broad, amorphous definition would support the notion that any approximation of the prior offense might be comparable. But, then, the definition in

10

Webster's II New College Dictionary 228 (1999) seems to require more equivalency, to-wit: "1. Capable of being compared. 2. Worthy of comparison. 3. Like or equivalent."

The entry for the adjective "comparable" in Roget's II The New Thesaurus 182 (3d ed. 1995), advances the concept of sameness, to-wit: "Possessing the same or almost the same characteristics: alike, analogous, corresponding, equivalent, like, parallel, similar, uniform." Finally, Burton's Legal Thesaurus 95 (3d ed. 1998), offers two entries for the word, "comparable," indicating that the word can carry different meanings. One entry is defined as "[c]apable of comparison" and the other entry is defined as "[e]quivalent." The first entry recites as synonyms such words as "akin, alike, analogous, . . . approximate, . . . close," which would more closely support the State's close-enough-for-horseshoes-and-hand grenades view of comparable. In contrast, the second entry recites such synonyms as "coequal, . . . identical, interchangeable, matched, . . . without distinction." Obviously, the second definition of comparable more closely supports the concept of identical-or-narrower elements.

With this ambiguity in the meaning of comparable, it is appropriate for us to turn to legislative history. Globally, the KSGA was a significant change in the way that criminal defendants are sentenced. In *State v. Grady*, 258 Kan. 72, 89-90, 900 P.2d 227 (1995), we recited the Legislature's stated principles behind the seismic shift to the KSGA:

> "The Kansas Legislature did not include in the statutes the purposes and objectives of the guidelines. According to the legislative history, the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 1994 Supp. 21-4701 *et seq.,* is based on the following principles:
>
> "1. Prison space should be reserved for serious/violent offenders who present a threat to society.

11

"2. The degree of sanctions imposed should be based on the harm inflicted.

"3. *Sanctions should be uniform and not related to socioeconomic factors, race, or geographic location.*

"4. Penalties should be clear so everyone can understand exactly what has occurred once sentence is imposed.

"5. The State has an obligation to rehabilitate those incarcerated, but persons should not be sent to prison solely to gain education or job skills, as these programs should be available in the community.

"6. The system must be rational to allow policy makers to allocate resources. Coates, Summary of the Recommendations of the Sentencing Commission, p. 6 (Report to Senate Committee on Judiciary, January 14, 1992). See also Kansas Sentencing Guidelines Implementation Manual, p. i-1-2 (1992).

"Additionally, this court has recognized that the purpose of the retroactivity provision of the KSGA is to reduce prison overcrowding while protecting public safety. The guidelines were intended to standardize sentences so that similarly situated offenders would be treated the same, limiting the effects of racial or geographic bias. *State v. Gonzales,* 255 Kan. 243, 249, 874 P.2d 612 (1994)." (Emphasis added.)

Subsequently, we reiterated the principle of equal treatment, free of racial and geographic bias. See *State v. Huerta*, 291 Kan. 831, 836, 247 P.3d 1043 (2011) ("[T]he principal point of enacting the KSGA was '"to standardize sentences so that similarly situated offenders would be treated the same, thus limiting the effects of racial and geographic bias."' [Citations omitted.]"); *State v. Roderick*, 259 Kan. 107, 112, 911 P.2d 159 (1996) ("The guidelines were intended to standardize sentences so that similarly situated offenders would be treated the same, limiting the effects of racial or geographic bias."). The legislative intent to treat people the same is also arguably reflected in the specific provision of K.S.A. 2017 Supp. 21-6811(e)(3) that defaults to a nonperson

12

classification where we do not know of a comparable Kansas offense. In any event, the elimination of unwarranted disparity was clearly an overarching goal of the KSGA.

Allowing sentencing courts to utilize an imprecise, ad hoc comparison of out-of-state crimes to Kansas offenses under K.S.A. 2017 Supp. 21-6811(e)(3) to enhance the current Kansas sentence promotes, rather than curtails, the disparate treatment of similarly situated persons that the KSGA sought to cure. Moreover, statutes fixing sentences that are so vague that the test for enhancement devolves into "guesswork and intuition" can run afoul of due process considerations. See *Johnson v. United States*, 576 U.S. ____, 135 S. Ct. 2551, 2556-59, 192 L. Ed. 2d 569 (2015) (finding enhancement residual clause of ACCA unconstitutionally vague).

On the other hand, interpreting "comparable offenses" in K.S.A. 2017 Supp. 21-6811(e)(3) to mean that the out-of-state crime cannot have broader elements than the Kansas reference offense—that is, using the identical-or-narrower rule—furthers the KSGA's goal of an even-handed, predictable, and consistent application of the law across jurisdictional lines. Cf. *Johnson*, 135 S. Ct. at 2562-63 (discussing goal of doctrine of stare decisis to effect even-handed, predictable, and consistent application of the law). Accordingly, we hereby adopt that interpretation. For an out-of-state conviction to be comparable to an offense under the Kansas criminal code, the elements of the out-of-state crime cannot be broader than the elements of the Kansas crime. In other words, the elements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced.

Applying our test in this case, we compare the elements of the Missouri burglary offense with the elements of Kansas' burglary of a dwelling:

13

| K.S.A. 21-3715 Burglary | Mo. Rev. Stat. § 569.170 (1986) Burglary in the second degree |
|---|---|
| "Burglary is knowingly and without authority entering into or remaining within any:<br><br>"(a) Building, manufactured home, mobile home, tent or other structure which is a dwelling, with intent to commit a felony, theft or sexual battery therein;<br><br>"(b) building, manufactured home, mobile home, tent or other structure which is not a dwelling, with intent to commit a felony, theft or sexual battery therein; or<br><br>"(c) motor vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property, with intent to commit a felony, theft or sexual battery therein.<br><br>"Burglary as described in subsection (a) is a severity level 7, person felony. Burglary as described in subsection (b) is a severity level 7, nonperson felony. Burglary as described in subsection (c) is a severity level 9, nonperson felony." | "1. A person commits the crime of burglary in the second degree when he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein.<br><br>"2. Burglary in the second degree is a class C felony." |

| K.S.A. 21-3110 Definitions | Mo. Rev. Stat. § 569.010 (1986) Chapter definitions |
|---|---|
| "(7) 'Dwelling' means a building or portion thereof, a tent, a vehicle or other enclosed space which is used or intended for use as a human habitation, home or residence." | "(2) 'Inhabitable structure' includes a ship, trailer, sleeping car, airplane, or other vehicle or structure:<br><br>(a) Where any person lives or carries on business or other calling; or<br><br>(b) Where people assemble for purposes of business, government, education, religion, entertainment or public transportation; or<br><br>(c) Which is used for overnight accommodation of persons. Any such vehicle or structure is 'inhabitable' regardless of whether a person is actually present[.]" |

The comparison reveals two elements that are broader in the Missouri statute: the specific intent required and the structure involved. The Kansas crime to which the Missouri conviction is being compared—burglary of a dwelling—requires that the entry into or remaining within be done with the specific intent to commit a felony, theft, or sexual battery therein. In contrast, the specific intent required for the Missouri second-degree burglary is that the burglar's purpose is to commit any crime. Consequently, the mere existence of the Missouri conviction does not establish the mental state element of the Kansas reference offense because the Missouri mental state element is broader. The purpose for the unlawful entry in Missouri could have been to commit misdemeanor property damage which would not be a burglary in Kansas.

And, of course, the critical element of the Kansas crime is that the structure involved must be a dwelling, defined as "a building or portion thereof, a tent, a vehicle or other enclosed space which is used or intended for use as a human habitation, home or residence." K.S.A. 21-3110(7). In the Missouri crime, in contrast, the element of the charged crime was that Wetrich unlawfully entered or remained within an inhabitable structure, which is broadly defined to include, in addition to a structure where any person lives, such non-dwelling places as a business, government office, school, church, roller-skating rink, or bus station. Again, the breadth of the element in Missouri defeats comparability with the Kansas crime of burglary of a dwelling. And, as suggested above, we agree with *Mathis*' lesson on the distinction between elements and means; the modified categorical approach is not employed to discover which alternative means or facts were used in Missouri to establish the crime's inhabitable-structure element. Again, the Missouri prior conviction fails our comparability test.

In sum, we hold that the Missouri conviction for second-degree burglary was not comparable to the Kansas offense of burglary of a dwelling. Moreover, when the current crime was committed, this State did not have a comparable offense to Missouri's second-

15

degree burglary and, accordingly, that prior conviction had to be classified as a nonperson felony. The Court of Appeals is affirmed; the district court is reversed. Wetrich's sentence is vacated, and the matter is remanded for resentencing with a criminal history score of E.

Reversed, sentence vacated, and case remanded with directions.