NOT DESIGNATED FOR PUBLICATION

No. 127,040

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRANDON JAN RIDDER,
*Appellant*.


MEMORANDUM OPINION

Appeal from Smith District Court; PRESTON A. PRATT, judge. Submitted without oral argument. Opinion filed January 31, 2025. Affirmed.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., GARDNER and COBLE, JJ.


PER CURIAM: Brandon Jan Ridder appeals the prison sentence imposed by the Smith County District Court. Ridder contends that the district court improperly aggregated three Colorado misdemeanors to classify them as an adult person felony for purposes of his criminal history. On our review, because Ridder admitted to his criminal history score at sentencing and challenges his criminal history for the first time on appeal, he bore the burden of refuting that admission on appeal, and he fails to do so. We affirm his sentence.

FACTUAL AND PROCEDURAL BACKGROUND

On June 1, 2023, Ridder entered the home of a 74-year-old neighbor and severely beat and choked him. Because the conviction is not challenged in this appeal, the specifics of the crime require no further discussion.

Ridder ultimately entered a plea of no contest to aggravated battery. After assessing Ridder's understanding of the rights he was waiving by entering a plea and the voluntariness of that plea, the district court accepted the plea and adjudicated Ridder guilty of aggravated battery.

Before sentencing, the State provided notice that it planned to seek an upward dispositional sentencing departure primarily because of the violence of the offense and the vulnerability of the victim. The presentence investigation (PSI) report showed that Ridder had a substantial criminal history of mostly misdemeanor offenses and a couple of nonperson felonies. Pertinent to his appeal, three Colorado misdemeanors for violation of a protective order were aggregated to a person felony for purposes of determining Ridder's criminal history score. In total, the PSI report classified Ridder's criminal history as a C.

At sentencing, Ridder's counsel agreed with the accuracy of the PSI report, and when asked by the district judge, Ridder personally agreed with the accuracy of the prior convictions listed in the PSI report. The court classified his criminal history score as C.

To counter the State's motion for a dispositional departure, Ridder's mother testified at the hearing to explain his mental illness and related issues. During her testimony, she described that the protective orders in Colorado were issued to protect her from Ridder when he would go on and off his medications. Essentially, Ridder would be without anywhere to live during these periods, and he would linger at his mother's

apartment complex in public areas. She did not call the police when he violated the orders; she believed the apartment office called them. On cross-examination, Ridder's mother explained that in Colorado, he ran up to her aggressively "like a gorilla," as though he would harm her, but he did not actually touch her, and he never actually harmed her.

The district court granted the State's motion for departure, finding that the victim in this case was particularly vulnerable and the crime manifested excessive brutality. The court considered Ridder's mental health issues in mitigation but concluded that his choice not to take his medication contributed to the psychotic episode. Accordingly, the district court imposed a prison sentence of 27 months, followed by 12 months' postrelease supervision. The court awarded Ridder 151 days of jail time credit.

Ridder has timely appealed.

RIDDER DOES NOT CARRY HIS BURDEN TO SHOW THE DISTRICT COURT ERRED

Ridder now argues, for the first time on appeal, that the district court improperly calculated his criminal history score by aggregating the three prior Colorado misdemeanors as a person felony. He concedes he did not raise this issue before the district court but contends we may consider the issue on appeal under the authority of K.S.A. 2022 Supp. 21-6820(e)(2) and (e)(3), and because a court may correct an illegal sentence at any time.

*Legal Principles Applicable to Sentencing Appeals and Criminal History*

We first review the pertinent legal standards. In any direct appeal from a conviction, the appellate court may review a claim that:

3

"(2) the sentencing court erred in either including or excluding recognition of a prior conviction or juvenile adjudication for criminal history scoring purposes; or

"(3) the sentencing court erred in ranking the crime severity level of the current crime or in determining the appropriate classification of a prior conviction or juvenile adjudication for criminal history purposes." K.S.A. 21-6820(e)(2) and (3).

Because Ridder has taken a direct appeal from sentencing, these provisions apply to authorize appellate consideration of his challenge. Ridder's gridbox sentence, although it was a departure, was determined by the severity level of his offense and his criminal history score. K.S.A. 21-6804(c); *State v. Steinert*, 317 Kan. 342, 343, 529 P.3d 778 (2023). If either of these determinations was made in error, the sentence imposed is illegal. 317 Kan. at 343.

Determining legal error in assigning a criminal history score requires construction and application of various sentencing statutes, which present questions of law subject to unlimited appellate review. *State v. Newman-Caddell*, 317 Kan. 251, 258-59, 527 P.3d 911 (2023).

An offender's criminal history is composed of his or her prior criminal convictions or juvenile adjudications, including out-of-state convictions or adjudications. K.S.A. 21-6810(a) (listing types of offenses used to calculate criminal history); K.S.A. 21-6811(e)(1) ("Out-of-state convictions and juvenile adjudications shall be used in classifying the offender's criminal history."). Accordingly, the district court correctly included Ridder's prior Colorado convictions in calculating his criminal history score in this case.

Likewise, K.S.A. 21-6811(a) directs a sentencing court to aggregate every three class A and B misdemeanor convictions as one person felony conviction when calculating a defendant's criminal history score.

4

"(a) Every three prior adult convictions or juvenile adjudications of class A and class B person misdemeanors in the offender's criminal history, or any combination thereof, shall be rated as one adult conviction or one juvenile adjudication of a person felony for criminal history purposes." K.S.A. 21-6811(a).

Here, Ridder's prior misdemeanor convictions at issue occurred in Colorado. When considering the classification of an out-of-state misdemeanor conviction, the sentencing court must compare the out-of-state conviction to the comparable Kansas offense to determine how the out-of-state conviction should be classified for criminal history purposes. K.S.A. 21-6811(e)(2)(B).

"(B) if a crime is a misdemeanor in the convicting jurisdiction, the state of Kansas shall refer to the comparable offense under the Kansas criminal code in effect on the date the current crime of conviction was committed to classify the out-of-state crime as a class A, B or C misdemeanor. If the comparable offense in the state of Kansas is a felony, the out-of-state crime shall be classified as a class A misdemeanor. If the state of Kansas does not have a comparable offense in effect on the date the current crime of conviction was committed, the out-of-state crime shall not be used in classifying the offender's criminal history." K.S.A. 21-6811(e)(2)(B).

As noted above, Ridder's PSI report reflected, among other convictions, three prior convictions in Colorado for violating a protective order under Colo. Rev. Stat. § 18-6-803.5(1)(a). The district court could properly aggregate these offenses into a person felony only if they constituted *comparable* class A or B misdemeanors under Kansas law. K.S.A. 21-6811(e)(2)(B). Ridder suggests that, under the Kansas Supreme Court's ruling in *State v. Wetrich*, 307 Kan. 552, 562, 412 P.3d 984 (2018), a court may only deem an out-of-state offense comparable to a Kansas offense if the out-of-state offense has the same or narrower elements as the Kansas offense used for comparison. The State concedes that the *Wetrich* analysis of comparable offenses applies, though it argues *Wetrich* was wrongly decided. However, the State accepts that this court is bound by Kansas Supreme Court precedent absent some indication the Supreme Court is departing

5

from that precedent. See *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022). See *State v. Hasbrouck*, 62 Kan. App. 2d 50, 52, 506 P.3d 924 (2022) ("We must note that comparable Kansas offenses are still used in designating on out-of-state misdemeanor as a person or nonperson crime."), *rev. denied* 316 Kan. 761 (2022); *State v. Crandall*, No. 126,791, 2024 WL 4002882, at *2 (Kan. App. 2024) (unpublished opinion) ("Though the Kansas Legislature has provided a different framework for felony convictions, Kansas courts continue to use the comparability analysis discussed in [*Wetrich*], to determine whether an out-of-state misdemeanor should be classified as a person or nonperson offense.").

Again, the three aggregated Colorado misdemeanors were all violations of a protective order under Colo. Rev. Stat. § 18-6-803.5(1)(a). In pertinent part, that statutory offense provides:

"(1) A person commits the crime of violation of a protection order if, after the person has been personally served with a protection order that identifies the person as a restrained person or otherwise has acquired from the court or law enforcement personnel actual knowledge of the contents of a protection order that identifies the person as a restrained person, the person:

(a) Contacts, harasses, injures, intimidates, molests, threatens, or touches the protected person or protected property, including an animal, identified in the protection order or enters or remains on premises or comes within a specified distance of the protected person, protected property, including an animal, or premises or violates any other provision of the protection order to protect the protected person from imminent danger to life or health, and such conduct is prohibited by the protection order." Colo. Rev. Stat. § 18-6-803.5(1)(a).

The district court here did not identify the comparable Kansas offense. Ostensibly, this is because Ridder did not object to his criminal history classification at sentencing but instead admitted it under K.S.A. 21-6814(a) ("The offender's criminal history shall be admitted in open court by the offender or determined by a preponderance of the evidence

6

at the sentencing hearing by the sentencing judge."). This is crucial to our decision here. Our Supreme Court has recently outlined that this admission to criminal history, and the accompanying admission to the classification of the prior convictions included in that history, changes the burden of proof when an appellate court is faced for the first time on appeal with a sentencing challenge based on criminal history. See *State v. Daniels*, 319 Kan. 340, 554 P.3d 629 (2024); *State v. Corby*, 314 Kan. 794, 797, 502 P.3d 111 (2022). Under K.S.A. 21-6814(c), "the offender bears the burden of proving their criminal history by a preponderance of the evidence when their criminal history has previously been established at a sentencing hearing." *Daniels*, 319 Kan. at 348. Because Ridder admitted his criminal history was correct at sentencing, and did not notify the district court or the State of any errors on his criminal history at or before sentencing but brings his challenge to his criminal history for the first time on appeal, he now bears the burden of proof on appeal under K.S.A. 21-6814(c) to prove his criminal history by a preponderance of the evidence.

Ridder objects to us making such a finding under K.S.A. 21-6814(c) because the State did not raise his failure to object in its brief. Accordingly, he argues we should ignore it. But in the State's defense, our Supreme Court issued its decision in *Daniels* after briefing in this case was complete. In *Daniels*, the court clarified "that a defendant's admission to their criminal history score includes the admission that the PSI correctly classified the individual crimes included in that criminal history." 319 Kan. at 349. Considering this finding, we ordered the parties to brief the issue of why we should or should not apply *Daniels* and *Corby*, in determining the outcome of this appeal.

Accordingly, we may reach the issue on our own for at least two reasons. First, we have provided the parties the opportunity to address the topic with supplemental briefing. See *State v. Perkins*, 310 Kan. 764, 769, 449 P.3d 756 (2019) ("When an appellate court raises an issue, the parties should be afforded an opportunity to present their positions to the court."). Second, as previously stated, we exercise unlimited review over the legal

7

question Ridder presents us. And much like the State, we admit that we had questions whether *Corby* was dispositive of Ridder's appeal, because while Ridder makes a claim that his sentence is illegal, *Corby* did not appear to go so far. 314 Kan. at 798 ("Corby has not claimed he agreed to an illegal sentence; he has claimed he agreed to a sentence that *might* be illegal.").

But *Daniels* further clarifies the landscape. In *Daniels*, our Supreme Court made clear that "when K.S.A. 21-6814(a) provides a defendant can admit to criminal history, it means a defendant can admit to prior convictions and their classification as a felony or misdemeanor and as a person or nonperson crime." 319 Kan. at 347. In that case, Daniels' criminal history set forth in the PSI report included one person felony, a 2003 burglary conviction in Georgia under Ga. Code Ann. § 16-7-1. The PSI report did not include any information concerning this conviction beyond the applicable Georgia statute and the conviction's classification as an adult person felony. At sentencing, Daniels did not notify the court or the State of any errors on his criminal history worksheet, and he admitted his criminal history was correct. Then, on appeal, Daniels argued for the first time that he received an illegal sentence because the 2003 Georgia conviction should not have been scored as a person felony but as a nonperson felony, as a matter of law. *Daniels*, 319 Kan. at 341.

But the Georgia burglary statute is divisible into three versions of the crime, only two of which would be dwellings and thus scored as person crimes. The court observed, "Because the statute is divisible, his Georgia conviction *might* be a nonperson felony, but it *might not* be a nonperson felony." 319 Kan. at 345. As the court explained, his case rested on who bore the burden to prove which version of the Georgia statute he violated. Because Daniels admitted his criminal history was correct, and did not notify the court or the State of any errors on his criminal history at or before sentencing, on appeal, he bore the burden of proof under K.S.A. 21-6814(c). *Daniels*, 319 Kan. at 349.

8

In sum, under subsection (c), "the offender bears the burden of proving their criminal history by a preponderance of the evidence when their criminal history has previously been established at a sentencing hearing." 319 Kan. at 349. The Supreme Court found that Daniels failed to meet this burden because he did not provide the district court or the appellate courts with any evidence, such as his Georgia journal entry, outlining the elements of his Georgia burglary conviction to prove his previously established criminal history was incorrect. 319 Kan. at 349.

*Application of These Principles to Ridder's Claim*

We now apply the framework established under *Daniels* to Ridder's claim. Because Ridder admitted his criminal history was correct at sentencing, and did not notify the district court or the State of any errors on his criminal history at or before sentencing but brings his challenge to his criminal history for the first time on appeal, he now bears the burden of proof on appeal under K.S.A. 21-6814(c) to prove his criminal history by a preponderance of the evidence.

Rather than provide additional evidence to support his position, he makes a purely legal argument. On appeal, Ridder assumes that the comparable Kansas offense is K.S.A. 21-5924. Accordingly, for purposes of analyzing Ridder's appellate argument, we also presume, without deciding, that K.S.A. 21-5924 provides the comparable Kansas offense.

K.S.A. 21-5924 defines violation of a protective order as "knowingly violating" one of a list of several types of court orders. While the Colorado statute lists the types of conduct an offender must engage in to be considered a violation of the protective order, the Kansas statute merely prohibits a knowing violation of whatever restrictions have been imposed by the protective order. In this way, the elements of the Kansas statute appear much broader than the elements of the Colorado statute, which would meet Wetrich's standard of comparison. *Wetrich*, 307 Kan. at 562 ("[T]he elements of the out-

9

of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced.").

Perhaps implicitly conceding the breadth of the Kansas statute, Ridder does not compare the basic elements of the Colorado and Kansas offenses. Instead, he contends that the Colorado statute must be broader because it potentially encompasses a single type of hypothetical—that is, the indirect contact of a protected person by the restrained person through an attorney. But the Kansas statute prohibiting violation of a protective order specifically exempts contact of a restrained person by an attorney for legitimate purposes under K.S.A. 21-5924(c) ("No protective order . . . shall be construed to prohibit an attorney, . . . who is representing the defendant . . . from contacting the protected party for a legitimate purpose . . . ."). This hypothetical situation forms the basis of Ridder's argument that, when comparing K.S.A. 21-5924 to Colo. Rev. Stat. § 18-6-803.5(1)(a) under *Wetrich*, we must find the Colorado statute broader, and since it does not have the same or narrower elements than the Kansas offense, the three violations of the Colorado statute cannot be counted toward his criminal history.

But Ridder concedes that if any aspect of his admitted-to prior convictions under Colo. Rev. Stat. § 18-6-803.5(1)(a) is comparable to K.S.A. 2022 Supp. 21-5924, then his argument fails according to *Daniels*. And, quite simply, Ridder has failed to meet his burden of proof in this instance, for the following reasons.

Ridder's PSI shows his admitted-to prior convictions were to violations of Colo. Rev. Stat. § 18-6-803.5(1)(a), which again includes a long list of ways a "restrained person" can violate a protective order by contacting a protected person or protected property. Likewise, K.S.A. 21-5924(a) also contains multiple ways in which a person can violate various types of Kansas protective orders, whether that be a protection from abuse order, a restraining order, a pretrial or postrelease supervision order, protection from stalking or other type of order. Many of the violations contained in the two statutes are

10

comparable. But which precise sections we should compare are unknown to us—because Ridder has not met his burden by pointing us to them.

We could, once again, try to assume as much. After all, Ridder's mother provided testimony to support that she was the protected person and subject of the protective orders issued in Colorado, and Ridder apparently violated them by entering her property and running up to her aggressively, as though he would harm her. Violations of this type of protective order would mostly likely be criminal offenses in both Colorado and Kansas, on the face of both statutes. See Colo. Rev. Stat. § 18-6-803.5(1)(a) compared to K.S.A. 21-5924(a)(1) (violation of a protection from abuse order related to household members); K.S.A. 21-5924(a)(6) (violation of a protection from stalking order).

But it is not our task to make such presumptions. It is Ridder's burden to prove to us, by a preponderance of the evidence, exactly how his admitted prior convictions were incorrectly classified. He does not provide us with the precise section of the Kansas statute we should be comparing or give us any information with which we could make an accurate comparison. Instead, like the appellant in *Daniels*, he suggests the classification of his prior convictions *might* be illegal, if we rely upon his hypothetical. But he provides no evidence or legal authority to support his hypothetical, either.

And, as pointed out by the State, at least one Colorado court has found directly opposite to Ridder's proposal, determining that an attorney for a restrained person was allowed to contact a protected person for a legitimate purpose under Colo. Rev. Stat. 18-6-801.5(1)(b). *Pollack v. Boulder Cnty.*, No. 17-CV-02444-CMA-NRN, 2019 WL 588196, at *7 (D. Colo. Feb. 13, 2019), report and recommendation adopted, No. 17-CV-02444-CMA-NRN, 2019 WL 1292858 (D. Colo. Mar. 21, 2019) ("Pursuant to Colo. Rev. Stat. §§ 18-6-803.5(1)(b) and 18-13-126(1)(b)(II), an attorney hired by a restrained person . . . is exempt from the provisions of the no-contact order if 'the lawful purpose for locating the protected person is to interview' the protected person, 'or for any other lawful

purpose relating to the proper investigation of the case.'") (unpublished order). Thus Ridder fails to show us that his hypothetical, which he claims makes the Colorado statute broader than the comparable Kansas statute, finds any support in Colorado law.

Because Ridder admitted to his criminal history score, which included the admission that his PSI report correctly classified the individual crimes included in that criminal history, he bore the burden of refuting that admission on appeal. *Daniels*, 319 Kan. at 349-50. By offering no evidence to contradict his prior admission, Ridder fails to meet that burden.

Affirmed.