NOT DESIGNATED FOR PUBLICATION

No. 128,089

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

HUGO FIGUEROA*,*
*Appellant*.

MEMORANDUM OPINION

Appeal from Ford District Court; LAURA H. LEWIS, judge. Submitted without oral argument. Opinion filed November 7, 2025. Affirmed in part and reversed in part.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Ethan C. Zipf-Sigler*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before ISHERWOOD, P.J., SCHROEDER and PICKERING, JJ.

PER CURIAM: After convicting Hugo Figueroa of one count of possession of methamphetamine, the district court sentenced Figueroa to prison but granted probation for 18 months. In addition to court costs and additional fines, the district court imposed a $100 community corrections fee. Figueroa now appeals, asserting that his sentence is illegal because two prior out-of-state convictions were erroneously classified as person misdemeanors, thus affecting his criminal history score. He also claims the district court had no statutory authorization to impose a community corrections fee. After review, we find his criminal history score was properly calculated, but we find no statutory basis in

1

support of the community corrections fee. We thus affirm his sentence but reverse the imposition of the $100 community corrections fee.

FACTUAL AND PROCEDURAL BACKGROUND

On January 18, 2024, Sergeant Bryan M. Stammer was on patrol for the Ford County Sheriff's Office. That evening at approximately 7:35 p.m., he was dispatched to a rural part of Ford County, near mile maker 117 on Kansas Highway U50 after receiving reports of a possible drunk driver. The driver in a white Jeep reportedly had crossed the yellow centerline multiple times and twice almost struck other vehicles. Stammer was able to locate the vehicle as it drove into the Dodge City city limits. He activated his vehicle's emergency lights and stopped the Jeep in a parking lot.

Figueroa was the front seat passenger. As Dodge City Police Officer Angel Guzman approached Figueroa, he noticed Figueroa attempting to wipe off residue from a crystalline tablet onto his pants. Based on this observation, Guzman arrested Figueroa. Also in light of Figueroa's actions, Stammer searched the Jeep for additional illegal substances. Stammer located a clear plastic zipper style bag with a crystalline substance, a rolled marijuana cigarette, a short red straw, and a plastic "twist-off" style bag containing greenish-brown vegetation. Figueroa admitted that these items belonged to him. The driver admitted that she and Figueroa snorted meth off the tablet while they drove to Dodge City. The driver was also arrested.

The found substances relating to Figueroa were tested and found to be illegal substances. Specifically, the crystalline substance found in the clear plastic zipper style bag and the liquid in the smoking device tested positive for methamphetamine; the green vegetation in the marijuana cigarette and the greenish-brown vegetation found in the plastic "twist-off" style bag tested positive for THC.

2

Figueroa was charged with one count of possession of methamphetamine, a drug severity level 5 nonperson felony; one count of possession of marijuana with two prior convictions, a drug severity level 5 nonperson felony; and one count of possession of drug paraphernalia, a class B nonperson misdemeanor. Figueroa pled guilty to the methamphetamine possession in exchange for the State agreeing to dismiss the remaining charges.

Figueroa's presentence investigation (PSI) report listed three person misdemeanors which were converted into a person felony. Two of the three converted person misdemeanors were convictions for false imprisonment in Nebraska under Neb. Rev. Stat. § 28-315. The PSI report gave Figueroa a criminal history score of C, which placed him in a border box for sentencing. See K.S.A. 21-5706(c)(1); K.S.A. 21-6805(a).

At sentencing, Figueroa agreed that his criminal history score of C was correct. The district court imposed a 30-month prison sentence but granted 18 months of probation. The district court also ordered Figueroa to pay a $100 community corrections fee.

Figueroa now appeals.

ANALYSIS

I.      *The District Court Did Not Err in Including Two Prior Nebraska Misdemeanor Convictions in Figueroa's Criminal History Score*

*Preservation*

Figueroa challenges his criminal history score for the first time on appeal, claiming the district court improperly used "two prior Nebraska misdemeanors to

3

enhance [his] criminal history score." Because a "court may correct an illegal sentence at any time while the defendant is serving such sentence," we may review Figueroa's claim. See K.S.A. 22-3504(a); *State v. Hambright*, 310 Kan. 408, 411, 447 P.3d 972 (2019).

*Standard of Review*

Whether a sentence is illegal under K.S.A. 22-3504 is a question of law subject to unlimited review. *State v. Mitchell*, 315 Kan. 156, 158, 505 P.3d 739 (2022). To the extent that statutory interpretation is required, statutory interpretation is subject to unlimited review. If the statutory language is plain and unambiguous, courts apply such language as written. *State v. Kerrigan*, 317 Kan. 683, 686, 538 P.3d 852 (2023).

*Discussion*

A sentence is illegal when it is "[i]mposed by a court without jurisdiction; . . . does not conform to the applicable statutory provisions, either in character or punishment; or . . . is ambiguous with respect to the time and manner in which [the sentence] is to be served . . . ." K.S.A. 22-3504(c)(1). The defendant has the burden of proving his or her criminal history by a preponderance of the evidence if the defendant challenges his or her previously established criminal history score after the sentencing hearing. K.S.A. 21-6814(c).

> *The rules we follow when determining a criminal history score based on out-of-state convictions*

In determining a defendant's criminal history score, all prior convictions must be counted unless the convictions constitute an element of the present crime, enhance the severity level, or elevate the classification from a misdemeanor to a felony. K.S.A. 21-

4

6810(c), (d)(10). Out-of-state crimes are classified as misdemeanors or felonies according to the convicting jurisdiction. K.S.A. 21-6811(e)(2).

Out-of-state misdemeanors are classified as person or nonperson by referring to the comparable Kansas offense in effect on the date the current crime of conviction was committed. If there is no Kansas comparable person offense, the out-of-state misdemeanor must be classified as nonperson. K.S.A. 21-6811(e)(3)(A). "For an out-of-state conviction to be comparable to an offense under the Kansas criminal code, . . . the elements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced." *State v. Wetrich*, 307 Kan. 552, 562, 412 P.3d 984 (2018).

In 2019, the Legislature added K.S.A. 21-6811(e)(3)(B), which replaced the *Wetrich* framework with a new framework for determining when an out-of-state felony conviction should be classified as a person or nonperson offense. L. 2019, ch. 59, sec. 13. That amendment did not change the relevant language in K.S.A. 2019 Supp. 21-6811(e)(3)(A), which outlines the classification of an out-of-state misdemeanor as a person or nonperson offense:

> "In designating a misdemeanor as person or nonperson, comparable offenses under the Kansas criminal code in effect on the date the current crime of conviction was committed shall be referred to. If the state of Kansas does not have a comparable person offense in effect on the date the current crime of conviction was committed, the out-of-state crime shall be classified as a nonperson crime."

Other panels of this court have stated that, under the amended statute, the *Wetrich* framework still applies in classifying out-of-state misdemeanors as person or nonperson. See, e.g., *State v. Hasbrouck*, 62 Kan. App. 2d 50, 52, 506 P.3d 924 (2022). Here, because Figueroa's Nebraska false imprisonment convictions were misdemeanors under Neb. Rev. Stat. § 28-315(3), the *Wetrich* framework applies.

5

A.    *Burden to Designate a Record Under K.S.A. 21-6814(c), (d)*

Figueroa contends Neb. Rev. Stat. § 28-315, under which he was twice convicted for false imprisonment, is broader than its Kansas equivalent, K.S.A. 21-5411(a).

The State does not actually dispute Figueroa's claim that Neb. Rev. Stat. § 28-315(1) is broader than K.S.A. 21-5411(a). Instead, the State contends that Figueroa failed to prove his criminal history score was incorrect because he did not attach any journal entries from his Nebraska convictions to show that his conduct would not be criminalized in Kansas. Figueroa disputes this contention. He asserts he was not required to produce journal entries because Neb. Rev. Stat. § 28-315(1) does not contain alternative means.

As noted earlier, when a defendant challenges his or her criminal history score after the criminal history score has been previously established, the defendant has the burden to prove his or her criminal history score by a preponderance of the evidence. K.S.A. 21-6814(c). Additionally, "[i]f an offender raises a challenge to the offender's criminal history for the first time on appeal, the offender shall have the burden of designating a record that shows prejudicial error. If the offender fails to provide such record, the appellate court shall dismiss the claim." K.S.A. 21-6814(d). To designate a record showing prejudicial error, "the offender may provide the appellate court with journal entries of the challenged criminal history that were not originally attached to the criminal history worksheet." K.S.A. 21-6814(d).

The State relies on *State v. Ridder*, No. 127,040, 2025 WL 350231 (Kan. App. 2025) (unpublished opinion), *petition for rev. filed* February 21, 2025. After admitting to his criminal history score at sentencing, Ridder argued on appeal that the district court improperly aggregated three prior Colorado convictions for violations of a protective order into a person felony. The *Ridder* panel found that because the Colorado and Kansas statutes included multiple ways to violate a protective order, and Ridder did not provide

6

journal entries from his Colorado convictions, it was unclear which statutory sections should be compared. Ridder thus failed to prove by a preponderance of the evidence that his criminal history score was incorrect. 2025 WL 350231, at *5-6.

*Ridder*, however, is distinguishable from this case. Neb. Rev. Stat. § 28-315(1) and K.S.A. 21-5411(a) do not contain multiple ways to commit the defined offenses as the statutes in *Ridder* did. Current research does not reveal any cases where courts have applied K.S.A. 21-6814(d) to require journal entries or other evidence when the out-of-state statute contained only one way to commit the offense.

In support, Figueroa cites *State v. Daniels*, 319 Kan. 340, 554 P.3d 629 (2024), to suggest he only has to show Nebraska's statute is broader as a matter of law. After admitting to his criminal history score at sentencing, Daniels challenged the classification of his prior Georgia conviction for burglary as a person offense. In its analysis, the *Daniels* court stated that, under K.S.A. 21-6811, it had to "first determine whether Daniels' Georgia conviction *must* be scored as a nonperson crime as a matter of law." 319 Kan. at 343. Because Georgia's burglary statute was divisible—containing three ways to commit burglary—Daniels' argument that his conviction under that statute must be a nonperson offense as a matter of law failed. Instead, his conviction may or may not have been a person offense depending on which version of the offense he committed. 319 Kan. at 345. Daniels thus had the burden to prove he committed a version of burglary that was not a person offense, and he failed to present the necessary evidence. 319 Kan. at 349-50.

In reaching its conclusion, the *Daniels* court briefly discussed *State v. Busch*, 317 Kan. 308, 528 P.3d 560 (2023). Busch also admitted to his criminal history score at sentencing before challenging the classification of his prior New Jersey convictions for burglary and criminal trespass as person offenses. Busch did not present records from his New Jersey convictions on appeal. The *Busch* court held that the elements in New Jersey's burglary statute did not require proof that the burgled structure was a residence,

dwelling, or habitation. Therefore, Busch's New Jersey burglary convictions had to be classified as nonperson felonies. 317 Kan. at 313. On the other hand, because New Jersey's criminal trespass statute contained at least one version of the offense that could be a person offense, there was no error in classifying Busch's criminal trespass conviction as a person offense. 317 Kan. at 314.

In *Daniels*, the State criticized the *Busch* holding for disregarding Busch's burden of proof. The *Daniels* court noted the State failed to brief the burden of proof issue in *Busch* and explained: "Busch would have met his burden under [K.S.A. 21-6814(c)] by showing his out-of-state burglary convictions, which were not based on a statute with alternative means, were nonperson crimes as a matter of law pursuant to K.S.A. 21-6811(e)(3)(B)(i), (iii)." 319 Kan. at 349. On the other hand, Busch would not have met his burden in challenging the classification of his New Jersey criminal trespass conviction because that statute contained alternative means. 319 Kan. at 349.

*Busch* and *Daniels* thus support Figueroa's contention that if he can show Nebraska's false imprisonment statute is broader than its Kansas equivalent as a matter of law, he succeeds on appeal without having to provide additional evidence. Neb. Rev. Stat. § 28-315(1) contains only one way to commit false imprisonment. Accordingly, the elements under that statute can be examined as a matter of law without referring to journal entries or other records.

B.      *Comparing Neb. Rev. Stat. § 28-315(1) to K.S.A. 21-5411(a)*

Having established that Figueroa may challenge his criminal history score by comparing the false imprisonment statutes of Nebraska and Kansas—Neb. Rev. Stat. § 28-315(1) and K.S.A. 21-5411(a), respectively—without referring to journal entries outside of his PSI report, we now consider and compare the respective state statutes.

Neb. Rev. Stat. § 28-315(1) defines false imprisonment as "knowingly restrain[ing] another person without legal authority." Neb. Rev. Stat. § 28-315(3) classifies the crime as a Class I misdemeanor, but it does not identify it as either person or nonperson. In comparison, K.S.A. 21-5411(a) states: "Criminal restraint is knowingly and without legal authority restraining another person so as to interfere substantially with such person's liberty." Under this statute, criminal restraint is classified as a class A person misdemeanor. K.S.A. 21-5411(b).

Figueroa argues the substantial interference requirement in K.S.A. 21-5411(a) means that Neb. Rev. Stat. § 28-315(1) criminalizes a broader range of conduct by encompassing any form of restraint.

On first impression, K.S.A. 21-5411(a) appears to criminalize a narrower range of conduct than Neb. Rev. Stat. § 28-315(1). But a closer look shows otherwise. Neb. Rev. Stat. § 28-312(1) defines "restrain" as used in Neb. Rev. Stat. § 28-315:

"(1) Restrain shall mean to restrict a person's movement *in such a manner as to interfere substantially with his liberty*:
(a) By means of force, threat, or deception; or
(b) If the person is under the age of eighteen or incompetent, without the consent of the relative, person, or institution having lawful custody of him." (Emphasis added).

Therefore, Neb. Rev. Stat. § 28-315(1) can be read as: "A person commits false imprisonment in the second degree if he knowingly [restricts a person's movement in such a manner as to interfere substantially with his liberty] without legal authority." This reading makes Neb. Rev. Stat. § 28-315(1) identical to K.S.A. 21-5411(a).

Accordingly, Figueroa's claim that false imprisonment in Nebraska encompasses a broader range of conduct than criminal restraint in Kansas is unpersuasive. The plain language of Neb. Rev. Stat. § 28-315(1), coupled with the definition of "restrain" in Neb. Rev. Stat. § 28-312(1), shows that Nebraska's false imprisonment offense is identical to criminal restraint under K.S.A. 21-5411(a).

We find that the two prior Nebraska convictions were properly classified as person misdemeanors, and the district court did not err in calculating Figueroa's criminal history score. Therefore, Figueroa's claim fails as a matter of law.

II.    *The District Court Erred in Imposing Both a Correctional Supervision Fee and a Community Corrections Fee*

*Preservation*

Figueroa challenges the district court's imposition of a $100 community corrections fee at sentencing. He acknowledges that he raises this issue for the first time on appeal.

Ordinarily, a party cannot raise an issue on appeal if it was not raised at the district court. But there are three exceptions to this rule: (1) The issue "'involves only a question of law arising on proved or admitted facts . . . ; (2) . . . consideration is necessary to serve the ends of justice or to prevent the denial of fundamental rights'"; and (3) the district court was right for the wrong reason. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021).

Figueroa asks us to review this issue under the first and second preservation exceptions.

Figueroa cites *State v. Garcia-Garcia*, 309 Kan. 801, 822, 441 P.3d 52 (2019), where the Supreme Court considered for the first time on appeal whether the district court complied with K.S.A. 22-4513 in imposing attorney fees. Kansas courts have consistently considered challenges to such fees for the first time on appeal. See, e.g., *State v. Robinson*, 281 Kan. 538, 541, 132 P.3d 934 (2006).

The State responds that evaluating the community corrections fee requires factual development not contained in the record. The State also contends that, because Figueroa does not explain why he did not raise this issue at the district court, we should decline to consider the merits.

We are not persuaded by the State's assertion that this issue requires further factual development. Here, Figueroa challenges the district court's authority to impose a community corrections fee at all. He does not challenge the extent or reasonableness of the fee. As such, this challenge presents a question of law rather than a factual determination. See *Unruh v. Purina Mills*, 289 Kan. 1185, 1200, 221 P.3d 1130 (2009) ("The issue of the district court's authority to award attorney fees is a question of law over which appellate review is unlimited.").

Furthermore, the State's position that Figueroa's failure to explain why he did not raise this issue below precludes appellate review is an incorrect reading of Supreme Court Rule 6.02(a)(5) (2025 Kan. S. Ct. R. at 36). That rule does not require a party to explain why an issue was not raised below. Rather, it requires a party to show why an issue should be considered for the first time on appeal. *In re A.S.*, 319 Kan. 396, 402, 555 P.3d 732 (2024). Figueroa cited the first and second preservation exceptions, and he is correct that this issue warrants consideration under either exception.

*Standard of Review*

The district court's authority to impose a fee is a question of law subject to unlimited review. *Unruh*, 289 Kan. at 1200.

*Discussion*

Figueroa notes there is statutory authority for a correctional supervision fee under K.S.A. 21-6607(c)(3)(A). But he claims "there is no equivalent statutory authority for a community corrections fee" and the district court thus erred in imposing such a fee without a statutory basis. The State suggests the community corrections fee stemmed from K.A.R. 44-5-115(b)(1), which allows the Department of Corrections (DOC) to charge a fee of $30 per month for probation supervision.

At the sentencing hearing, the district court ordered a $120 correctional supervision fee in addition to a $100 community corrections fee for collection by community corrections. The journal entry of sentencing did not list any statutory authority for the community corrections fee. It appears this fee stemmed from the PSI report, which proposed a $100 community corrections fee. The PSI report also does not list any statutory authority for that fee, nor does it otherwise explain where that fee came from. There was no discussion about the origin of this fee during sentencing.

Figueroa's challenge presents an issue of first impression, as Kansas courts have not considered a district court's authority to impose a community corrections fee. A district court may not impose fees absent statutory authority. See *Schmidt v. Trademark, Inc.*, 315 Kan. 196, 208, 506 P.3d 267 (2022) (attorney fees); *Johnson v. Westhoff Sand Co.*, 281 Kan. 930, 959, 135 P.3d 1127 (2006) (witness fees).

K.S.A. 21-6607(c)(3)(A) requires the district court to impose, as part of a defendant's probation conditions, a $120 correctional supervision fee if the defendant was convicted of a felony. The statute does not mention a separate community corrections fee.

K.A.R. 44-5-115(b)(1), on which the State relies, provides that individuals under the DOC's supervision "shall be assessed a supervision service fee of a maximum of $30.00 per month." This fee is collected by the DOC and is a supervision condition. K.A.R. 44-5-115(b)(1). This provision appears more akin to the correctional supervision fee imposed on Figueroa than a general community corrections fee. K.A.R. 44-5-115 lists a host of other fees, but those fees target other subjects, such as a trust account administration fee, medical care fees, and testing and program fees. See K.A.R. 44-5-115(a), (c)-(f).

K.A.R. 44-5-115 is authorized by several statutes. But none of those statutes reference a community corrections fee. See K.S.A. 21-6609; K.S.A. 22-3717; K.S.A. 75-5210; K.S.A. 75-5251; K.S.A. 75-52,139. Indeed, no other statutes or regulations mention a community corrections fee. Conversely, the other fees ordered by the district court stem from specific statutory authorizations. See K.S.A. 12-16,119(a) (booking and processing fee); K.S.A. 22-3801(a) (court costs); K.S.A. 22-4513(a) (BIDS attorney fees); K.S.A. 22-4529 (BIDS application fee); K.S.A. 75-724(a) (DNA database fee); K.S.A. 2024 Supp. 75-52,144(d)(2) (Senate Bill 123 assessment and treatment fees).

In *Johnson*, the Supreme Court held that because K.S.A. 40-256—which authorizes attorney fees in insurance actions—did not specifically authorize witness fees, the district court erred in awarding such fees under that statute. 281 Kan. at 959. In reaching this conclusion, the court observed that other statutes specifically authorized witness fees. 281 Kan. at 957.

Similarly, there is no specific statutory authorization for the community corrections fee in this case. Neither the journal entry of sentencing nor the PSI report give any indication of what authority the district court had to order such a fee. Moreover, the other fees ordered by the district court have their own specific statutory authorizations. Therefore, the imposition of the $100 community corrections fee at sentencing was incorrect, and we reverse that fee.

Affirmed in part and reversed in part.